THE STATE OF KANSAS V. THEODORE WHITE.

1. **PRIVILEGED COMMUNICATIONS;** *Client and Attorney; Privilege of Party, as a Witness.* A defendant charged with the crime of bigamy, being on the trial and testifying in his own behalf, was required by the court to answer on cross-examination whether he had not been consulted or advised by his counsel in regard to obtaining a copy of a decree of divorce alleged to have been granted prior to the second marriage, against the objection of such defendant that the communications between himself and his attorneys were privileged. *Held,* That the court erred, as the defendant had not referred to any consultation or advice in connection with his attorneys in his direct examination, and that the communications were privileged. Any communication which an attorney is precluded by statute from disclosing, his client cannot be compelled to disclose against his objection of privilege.

2. **DISCHARGE OF JURY,** *in Criminal Actions; Disagreement; Absence of Defendant.* On a criminal trial for bigamy, the court being satisfied that the jury could not agree, discharged them in the absence of the prisoner and his counsel, after they had been together for deliberation from four o'clock P. M. to six o'clock A. M., and had the record show that the discharge of the jury was granted after it had been made to appear to the court that the jury could not agree upon a verdict, and thereafter overruled the motion and plea of the prisoner interposed for his release and discharge on account of the action of the court. *Held,* That the motion and plea were properly overruled.

3. **RECORDS; EVIDENCE;** *Marriage Licenses.* The books of record of marriage licenses kept by the probate judges of the several counties are evidence of all matters required by the statute to be contained therein.

## Appeal from Wilson District Court.

INFORMATION for bigamy. The information charged that *White,* being a married man, and having actual knowledge that he had a wife, to-wit, one Ella White, then being and living in the state of New York, from which said wife he had never been divorced, did, at the county of Wilson, in the state of Kansas, in the month of February 1877, unlawfully marry and take to wife another person, to-wit, one Miss M. F. McG., etc. *White* was found guilty, at the May Term 1877, and sentenced to imprisonment in the penitentiary, and he now brings the case here for review.

*Chase, Kirkpatrick & Burge,* for appellant.

*Willard Davis,* attorney-general, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The defendant White was charged on information with the offense of bigamy. The first jury impanneled to try the cause could not agree, and were discharged without finding a verdict; and another jury, before which the cause was tried at the same term, rendered a verdict of guilty. Thereupon the defendant was sentenced to the penitentiary for the term of three years, and he now appeals to this court.

I. The serious error alleged is, the action of the court in compelling the defendant to disclose communications between himself and his attorney. Evidence having been admitted concerning a divorce having been granted between the prisoner and his first wife, in the state of New York, prior to the second marriage, the defendant, testifying in his own behalf was required by the court to answer, on cross-examination, "if he had not been consulted, or advised by his counsel in regard to obtaining a copy of such decree." Objection was duly made to the question on the ground that the communications between counsel and client were privileged; but the court overruled the objection, and in so doing committed material error. The defendant in fully answering the question gave the advice of one of his lawyers to him. The statute provides that an attorney shall be incompetent to testify concerning communications made to him by his client in that relation, or his advice thereon, without the client's consent. This statute would be of no utility or benefit, if the client could be compelled, against his consent, to make such disclosures. It would be absurd to protect by legislative enactment professional communications, and to leave them unprotected at the examination of the client. In such an event, in all civil actions, the confidential statements of client and counsel would be exposed, and likewise the same would

occur in all criminal actions where the defendant should testify. The authorities are otherwise. The true view seems to be, that communications which the lawyer is precluded from disclosing, the client cannot be compelled to disclose. This privilege is essential to public justice, for did it not exist no man would dare to consult a professional adviser, with a view to his defense, or to the enforcement of his rights. Whar. on. Ev., § 583; *Hemenway v. Smith*, 28 Vt. 701; *Carnes v. Platt*, 15 Abb. Pr., (N.S.) 337; *Merrit v. Morgan*, 21 Wend. 467; *Williams v. Fitch*, 18 N. Y. 546–550; *Britton v. Lorenz*, 45 N. Y. 51–59; *Bigler v. Regher*, 43 Ind. 112; 1 Greenl. on Ev., §§ 236–240. It is urged against a reversal of the judgment that the question might have been answered by "yes," or "no," and that the advice or conversation testified to was not very material, and could not have been prejudicial to the rights of the defendant. We answer that the district court violated a very important rule of evidence, and forced the disclosure of privileged communications in a criminal case where the liberty of the defendant was at stake; and we will not stop to weigh the effect of the answer, or determine how far the rights of the prisoner were sacrificed. It is very important to public interests that the purpose of the statute as to such communications should be maintained in all its rigor. It is the best rule. *Obsta principiis.* If a client sees fit to be a witness, he makes himself liable to a full cross-examination. But in this case the defendant did not, in his direct examination, refer to his counsel, or any conversation with, or advice from them; and the question was inexcusable. This conclusion disposes of the case in this court, but as some other questions are presented in the briefs of counsel, we briefly give our views of two of them which may upon a new trial again demand the attention of the district court.

II. Error is alleged in the discharge of the jury on the 4th of May 1877, from further consideration of the cause, in the absence of the defendant and his counsel. It appears that the jury, in the charge of the bailiff of the court, were

out deliberating in the case after the cause had been duly submitted to them fourteen hours — from four o'clock, P. M. of May 3d to six o'clock, A. M. May 4th — and the record shows that they were discharged because it appeared to the court that the jury could not agree. While it is true that the court should not have had the jurors called into the court-room and discharged in the absence of the defendant and his counsel, the error committed thereby was an immaterial one, and for which this court would not reverse the judgment. Neither should the motion, nor the plea in bar filed by the defendant have been sustained on account of such action. The irregularity of the court consisted in taking action in the absence of the prisoner, and his counsel, not in the fact that the jury were discharged after it had been made to appear to the court that they could not agree upon a verdict, and after a finding and entry of this fact were duly made a matter of record. The court had a right to discharge the jury after they had been kept together until it satisfactorily apppeared that there was no probability of their agreeing. Gen. Stat. ch. 80, civil code, § 281; and ch. 82, criminal code, § 208. In the case of the *United States v. Perez*, 9 Wheaton, 579, it was held that the court had the right to order the discharge of the jury; and the security which the public have for a faithful, sound and conscientious exercise of this discretion rests in this, as in other cases, upon the responsibility of the judge, under his oath of office. And it is held by all the federal courts, and the courts of Massachusetts, New York, Illinois, Kentucky, Mississippi, Iowa, and some other states, that where the jury have deliberated so long without finding a verdict as to preclude a reasonable expectation that they will agree, unless compelled to do so by famine or exhaustion, they may be discharged, if the record shows the necessity for such action, without the consent of the defendant, and the prisoner be tried by another jury. In *The State v. Vaughan*, 29 Iowa, 286, it was held in a case very similar to this, that the defendant should have been present at the time the court

discharged the jury, but as the defendant if present could only have objected to the action of the court, and since such objection would and must have been unavailing, no prejudice could have resulted from his absence, and hence such action of the court would not operate to reverse the case, or discharge the prisoner.

III. As tending to prove the second marriage of the appellant, and that it was celebrated in Wilson county, the state offered in evidence, against the objections of the appellant, the records of the probate court of Wilson county, containing a copy of the marriage license issued Feb. 25th 1877, by the probate judge of said county to the appellant, and authorizing him to be joined in marriage to one Miss Martha F. McGray, together with the copy of the return indorsed on the license, showing that the marriage was solemnized in said county on the 27th of February 1877 by one James A. Hunter. The law makes it the duty of the probate judges to correctly record such licenses, and returns, and provides a severe penalty for neglecting so to do; and further provides that the books of record of marriage licenses kept by the probate judges of the several counties shall be evidence in all courts. Gen. Stat. 561, ch. 61, §§ 6, 7, and 11. As the probate judge of Wilson county produced the books of record of his office, and duly identified the same, the court properly admitted the records in evidence. The law seems to have been strictly complied with, and as the original records were introduced, no copy thereof was needed, nor was any certificate or seal of the probate judge necessary to be attached thereto to make them admissible as evidence. Neither was the return of the person performing the marriage ceremony invalid, because it did not show on its face that the person whose name was subscribed to it was a person authorized by the statute to perform such ceremony. The defendant should have been identified as the person to whom the license was issued to make the same admissible, if he obtained it in person.

For the error committed in the action of the court in compelling the disclosure of the communications between the defendant and his attorney, the judgment is reversed, and the action remanded for a new trial.

All the Justices concurring.