THE STATE OF KANSAS v. JAMES SMITH *et al.*

JUROR, *Sickness of, to be Determined by Judicial Methods — Error in Discharging Jury.* At the trial of a criminal action, after the evidence both for the state and the defendants had been given, the jury were permitted to separate and go to their homes; during this recess it was reported to the court that one of the jurors was sick, and unable to attend. The determination of the fact of sickness on the part of the absent juror must be by judicial methods, and these include the presence of the defendants while that fact was being investigated, their right to produce witnesses, and of cross-examination; and it is error in the trial court to proceed to investigate and determine the fact of sickness of the absent juror, and for that cause to discharge the jury from any further consideration of the case, in the absence of the defendants from the court-room, they being charged with a felony.

*Appeal from Rice District Court.*

THE opinion, filed during the June session, 1890, of this court, contains a sufficient statement of the case.

*C. F. Foley,* and *W. E. Borah,* for appellants.

*L. B. Kellogg,* attorney general, and *J. W. Brinckerhoff,* county attorney, for The State.

Opinion by SIMPSON, C.: At the regular January term, 1890, of the district court of Rice county, the appellants, James Smith, John Smith, and Martin Smith, were placed

upon their trial, charged with burglary and larceny. They waived arraignment, entered a plea of not guilty, a jury was sworn, and the state and the defendants both submitted their evidence. All this took place on the 10th day of January. When the court met on the morning of the 11th of January, counsel for appellants asked permission to introduce further evidence in their behalf. The jurors were called, and all were present and took their seats in the jury-box; and thereupon Frank Fry, a juror, stated to the court that he was unable to sit as a juror on that day, on account of sickness; and upon this statement the court adjourned the hearing of the case until the 13th day of January. When the court met on the 13th, and the jury were called, all were present except two jurors, John Johnson and John Kelly. The court was informed that these two jurymen were sick, and an adjournment was ordered until the morning of the 14th of January. On that morning all the jurors were present and ready for duty except John Kelly. The jury were permitted to separate until 5 o'clock P. M. of that day (the 14th of January). At 5 o'clock P. M. the jury were again called, and it appearing that the juror Kelly was still absent and reported sick, the trial court discharged the jury from any further consideration of the case. During all this day, except during a short time in the morning, the defendants were absent from the court-room, being confined in the Rice county jail. They were not present at the time the jury were discharged, but their attorneys were in attendance, and objected to the discharge of the jury. The trial court entered on the journal the following order discharging the jury:

"Afterward, to wit, on the 14th day of January, 1890, and just before adjourning for supper, court being duly convened, the said jury was by the clerk called, and all responded to their names except John Kelly, who was then absent from court; and upon inquiry being made regarding the absence of said juror Kelly, the sheriff informed the court that a messenger had been sent for the said juror, John Kelly, and that said messenger stated that said Kelly reported himself too sick to be present in court; that said Kelly did not know when he

would be able to be present in court; that he might not be able to come into court for a week; and that said Kelly stated he would come into court as soon as he was able; and the court, being satisfied from the report of said sheriff, and also from a letter received from said juror by said court purporting to be written by said juror Kelly, that said juror John Kelly was seriously sick and unable to attend court, thereupon discharged said eleven jurors from the further consideration of said case.

"Whereupon, and at the same time, the defendants being then absent from the court-room and confined in the county jail of Rice county, Kansas, the court discharged the said jury from the further consideration of this cause; to all of which action of the court the defendants by their counsel then and there duly excepted, which exception was by the court allowed; that at the time of the discharge of said eleven jurors, neither of defendants' counsel, Messrs. Borah or Foley, who were present and defendants' said counsel, objected to the discharge of said eleven jurors from said case on the ground that their said clients, James, John and Martin Smith, defendants herein, were not present in court.

"During all the proceedings had in this cause on the 14th day of January, 1890, except upon convening of court in the morning, at which time no proceedings in this cause were had except to adjourn the further hearing of the same till the afternoon of the same day in order to hear from juror for whom a messenger was sent, the defendants and each of them was absent from the court-room and were confined in the county jail of Rice county, Kansas.

"Before the said eleven jurymen in attendance upon the trial of said cause were by the court discharged, the court duly inquired of said Foley and Borah if they were willing to proceed with the trial of the cause with the eleven jurors who were able to be and were present, and they replied that they were not willing so to do, but would require a full panel.

"That the continuance from the 13th to the 14th day of January was made by the court at its own instance, the defendants by their counsel objecting to such continuance."

On the 20th day of January, 1890, the appellants were arraigned upon the same information upon which they had previously been put upon trial, and objected to being required to plead to the information, on the ground that a jury had once

been sworn to try them, and that said jury had been discharged without their consent, in their absence, and while they were confined in the jail, and that they had once been put in jeopardy upon the offenses charged against them in the information. This was overruled. The appellants then filed their plea in abatement, setting up the same facts, and this was overruled. The appellants then pleaded not guilty, and pleaded these same facts in bar. The trial proceeded, and the appellants were convicted of the larceny of goods of the value of $50.93. A motion for a new trial and a motion in arrest of judgment, in which all these facts were again set forth, were both overruled. The appellants had all proper exceptions noted and saved on all these various rulings; at least they have done enough to fairly present the questions they discuss here for review. Their contention is embraced in these two propositions: that there was no evidence of the sickness of the juror Kelly that authorized the court to discharge the jury; and that such discharge was not legal without the presence of the appellants. Section 281 of the code provides:

"The jury may be discharged by the court on account of the sickness of a juror, or other action or calamity requiring their discharge, or by consent of both parties, or after they have been kept together until it satisfactorily appears that there is no probability of their agreeing."

Section 208 of the criminal code provides:

"The proceedings prescribed by law in civil cases in respect to the impaneling of jurors, the keeping of them together, and the manner of rendering their verdict, shall be had upon trials on indictments and informations for criminal offenses, except in cases otherwise provided by statute."

The court had the right to discharge the jury on account of the sickness of one of the members thereof. (*The State v. White*, 19 Kas. 445.)

It is insisted upon one side that the determination of the existence of such a sickness rests largely and almost exclusively in the discretion of the court; while the appellants contend that its existence must be established as a fact in ac-

cordance with the rules of evidence, and that a trial court cannot of its own motion, or from mere reports, unverified by affidavits or unsupported by oaths administered in open court, determine that there exists such an unavoidable necessity that the remaining jurors should be discharged, and by such an arbitrary exercise of judicial discretion deprive the appellants of the plea of once in jeopardy. The power to so discharge a jury is not to be arbitrarily exercised. One of the constitutional rights of a party charged with crime is, that he is not to be twice put in jeopardy for the same offense; and the power of a court to discharge a jury which has been sworn to pass upon the question of his guilt and innocence must be exercised with a view to preserve inviolate his constitutional right in this respect. The sickness of a juror is one of those unavoidable necessities which arise, beyond the power of the court or the prosecution to foresee. It seems clear on principle, as well as in view of the constitutional privileges of the prisoner, that this authority cannot be arbitrarily exercised; for, in the language of the supreme court of the state of Pennsylvania in the case of *The Commonwealth v. Clue*, 3 Rawle, 498 —

"Why should it be thought that the citizen had no other assurance than the arbitrary discretion of the magistrate for the enforcement of the constitutional principle which protects him from being twice put in jeopardy of life or member for the same offense, I am at a loss to imagine. If discretion is to be called in, there can be no remedy for the most palpable abuse of it but an interposition of the power to pardon, which is obnoxious to the very same objection. Surely every right secured by the constitution is guarded by sanctions more imperative. But in those states where the principle has no higher sanction than what is derived from the common law, it is nevertheless the right of the citizen, and consequently demandable as such. But a right which depends upon the will of the magistrate is essentially no right at all; and for this reason the common law abhors the exercise of a discretion in matters that may be subjected to fixed and definite rules."

This was said in a capital case, but the language of the section of the bill of rights in our state constitution is broad enough to include all felonies. It seems, however, to be the

rule in all grades of felony, that the only justification for the exercise of the power of a trial court to discharge a jury which has heard the evidence in a criminal case, is the existence of an absolute necessity for the discharge. Some unforeseen fact must intervene beyond the power of the court to control, before such a power can be legally exerted. The existence of this unforeseen fact that operates to stop the deliberation of the jury and prevents a verdict must be judicially ascertained and determined. That is to say, if the sickness of the juror does not occur in the immediate presence of the court, but commences during a recess and is reported, the fact of sickness must be established as any other fact is established in a court of justice, in accordance with the rules of evidence governing such matters. When an order is made by a trial court discharging a jury without verdict, to which has been committed the question of the guilt or innocence of a prisoner charged with a crime, the record ought to show affirmatively the existence of the fact which induced such order and justified the exercise of such extraordinary power. This much seems to be demanded in order to preserve to the prisoner the full benefit of the constitutional requirement in his behalf.

*Sickness of juror to be determined by judicial methods.*

The case of *Conklin v. The State*, decided by the supreme court of Nebraska in February, 1889, and reported in 41 N. W. Rep. 788, illustrates this view. Section 485 of the criminal code of that state provides—

"That in case a jury shall be discharged on account of sickness of a juror, or other accident or calamity requiring their discharge, or after they have been kept so long together that there is no probability of agreeing, the court shall, upon directing their discharge, order that the reasons for such discharge shall be entered on the journal; and such discharge shall be without prejudice to the prosecution."

The journal showed this order:

"Come also the jury, . . . and report in open court their inability to agree upon a verdict in this cause; and it appearing to the satisfaction of the court, upon examination of M. L. Brown, one of the jurors in said case, that by reason

of his sickness he was unable to further perform his duties as a juror, and upon further examination of each and every juror in said case, the court finds that there is no probability of the jurors agreeing upon a verdict, and that they had been out 21 hours without sleep, or a suitable place to sleep or rest, said jury is therefore discharged without day, without prejudice to the prosecution."

Commenting on this journal entry, the court says:

"The sickness of a juror is one of the causes recognized by the statute above quoted for the discharge of a jury, but it is submitted that such sickness is classed with 'other accident or calamity requiring their discharge,' and it appears to me that such sickness must be of a sudden and calamitous character, and of such a nature as to render his further detention in the jury-room manifestly improper. It does not appear here that the jury reported the sickness of one of their number, or that the juror himself claimed to be sick, or incapacitated on account of sickness from further service on the jury; nor in what the examination of the juror by the court consisted; nor whether the advice and services of a physician were had to ascertain and advise the court of the condition of the juror. Again, it does not appear that the jury were discharged solely on account of the sickness of this juror, but on the contrary, I think that, taking the whole journal entry together, it fairly appears that the sickness of the juror was not such that the court would have discharged the jury for that cause alone. If the sickness of this juror was such that his further service on the jury was impossible, what was the necessity, or even the propriety, of further examining each and every juror as to the probability of their agreeing upon a verdict, the length of time they had been out without sleep or a suitable place to sleep or rest?"

The logic of this case seems to require that there should in effect be a finding of fact as to the incapacity of the juror, by reason of sickness, to properly discharge his duty. In the case of *The State v. Shuchardt*, 18 Neb. 454, Judge Maxwell says:

"It was never intended to permit a court arbitrarily to discharge a jury for disagreement until a sufficient time had elapsed to preclude all reasonable expectation that they will ever agree."

In the case of *Dobbins v. The State*, 14 Ohio St. 493, the court, commenting on the power to discharge juries in criminal cases, say:

"That this power does not rest upon the arbitrary or uncontrollable discretion of the judge presiding at the trial, but is a legal discretion, to be exercised in conformity with known and established rules; and finally, unless the facts stated in the record clearly establish a case of necessity, the discharge will operate as an acquittal of the accused, and preclude his further prosecution."

This court, in the case of *The State v. White*, 19 Kas. 445, by the Chief Justice, says, that where the jury have deliberated so long without finding a verdict as to preclude a reasonable expectation that they will agree, they may be discharged, if the record shows a necessity for such action, without the consent of the defendant, and the prisoner be tried by another jury. All these authorities require that there must be a legal showing made and entered on the record, of the necessity for the discharge, and of the existence of the facts that authorize the exercise of the extraordinary power of the court.

Now the record in this case shows that one of the causes for which the trial court is authorized to discharge a jury in a criminal case, by the statute of this state, happened on this trial, to wit, the sickness of a juror. This sickness did not happen in the immediate presence of the court. The juror took sick at home, during a recess of the court, and the fact of sickness had to be established in accordance with the rules that govern in all cases when a fact is to be judicially established, and made a finding upon which to base a legal conclusion or a judicial action. Then, in accordance with these authorities quoted, and in view of the constitutional rights of the appellants and the requirements of § 207 of the code of civil procedure, these appellants ought to have been present in person during the investigation and determination of the existence of the fact of sickness. This case is not like that of *The State v. White*, 19 Kas. 445, where the jury were discharged because there was no reasonable probability of

their agreement.   In such cases, a consulting jury is in legal contemplation always in the presence of the court.   All their reports, of every kind and character, are made directly to the court, and the court alone has the sole right to question them as to the probabilities of an agreement.   In the very nature of things, as no one is allowed to be present at their deliberations, a determination by the court as to whether or not there is a reasonable probability of their agreement must be made on the report of the jury.   So the language of the court in the case of *The State v. White* as to the absence of the defendant at the time of the discharge of the jury cannot be fairly applied in a case like this, when the fact alleged as justifying a discharge of this jury happened out of the presence of the court, and while the jury were temporarily discharged from attendance in court.   In one case the court acts on an official report made by the jury, which the defendant has no right to question; in the other, an inquiry as to the existence of a fact alleged to have occurred away from the presence and observation of the court is to be made by judicial methods, and these include the presence of the parties interested, their right to introduce evidence and cross-examine witnesses.   We think Error in discharging jury. that error was committed in determining the sickness of a juror as a cause for the discharge of the jury, in the absence of the appellants.

It is evident from the record that error was also committed on the trial of the issue of fact made by the plea in abatement filed by the appellants and the replication filed by the county attorney.   This issue of fact was the sickness of the juror Kelly; and to maintain the issue on the part of the state, the county attorney was permitted, over the objection of the appellants, to read in evidence a letter purporting to have been written by the juror Kelly to the trial judge, without any preliminary proof whatever of its genuineness.   For these errors there must be a reversal; and for the reasons suggested by the court in the case of *Conklin v. The State*, 41 N. W. Rep. 788, we prefer this course, rather than to pass upon the other question before all the facts are fully and fairly presented.

This accords, too, with the case of *The State v. Myrick*, 38 Kas. 238.

We recommend that the judgment of the district court be reversed, and the cause remanded, with instructions to grant the appellants a new trial.

By the Court: It is so ordered.

All the Justices concurring.