The State v. Evans.

---

THE STATE OF KANSAS, *Appellee,* v. WILLIAM M. EVANS, *Appellant.*

No. 18,652.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Impeachment of Witness—Inquiry Must Relate to General Reputation.* In a prosecution for statutory rape a witness was asked if he knew the general reputation of the complaining witness, a girl of about fourteen years of age, for truth and veracity in the city of Lawrence. His answer in substance was that he knew only from what he had heard from several families with whom she had lived for a short time; that he had no knowledge of her general reputation among the neighbors where she lived. *Held,* that he was not competent to state what her general reputation for truthfulness was.

2. STATUTORY RAPE — *Practice — Oral Communication between Judge and Jury.* In a prosecution for statutory rape the jury had been out for thirty hours, and before reaching a verdict sent an inquiry to the court to know if it would be proper to return a verdict with a recommendation for clemency. The judge, in the absence of the defendant, went to the door of the jury room and stated orally that there would be nothing improper in such a verdict, if the jury saw fit to make it, but that he would not say whether the recommendation would be considered nor make any promise as to what he would do in such a case. Within fifteen minutes thereafter a verdict of guilty was agreed upon and returned with a recommendation for clemency. *Held,* that the instruction related only to the form of the verdict, and if proper at all was not required to be in writing; *held* further, that since it does not appear that the jury were induced to render a verdict of guilty by an implied promise that leniency would be shown, the irregularity is not sufficient to justify a reversal.

3. NEW TRIAL—*Misconduct of Jurors in Jury Room—Conflicting Affidavits.* On a motion for a new trial affidavits of some of the jurors were offered to the effect that the failure of the wife of defendant to testify was talked of in the jury room and considered by the jury. The state offered affidavits to the contrary which were sufficient to justify a finding that while some reference was made to the matter the jury gave no weight to it in arriving at their verdict. *Held,* that a new trial was properly denied.

Appeal from Clark district court; GORDON L. FINLEY, judge. Opinion filed November 8, 1913. Affirmed.

*W. W. Harvey,* of Ashland, for the appellant.

*John S. Dawson,* attorney-general, and *H. R. Daigh,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant appeals from a conviction of statutory rape. The complaining witness, Hazel B. Evans, was less than fourteen years old at the time of the alleged offense. Shortly before that she had been taken into the defendant's home at Minneola and adopted by the defendant and his wife as their daughter. She had assisted in the general housework about the restaurant and the hotel which they conducted. She had attended school but little. Her father's death occurred when she was very young, and from that time she had lived with her mother and stepfather in various towns in Texas, Oklahoma and Kansas, and before coming to Minneola she had been traveling about the country with them in a covered wagon, living in camps.

The first error complained of relates to the exclusion of evidence. A witness, Reverend Barnhart, who was in the employ of a church society organized for the purpose of finding homes for children, was given charge of the complaining witness by the probate court of Clark county soon after the complaint in this case

was filed. He placed her first in the home of a Mrs. Washington, in the country near Baldwin, in Douglas county, where she remained from the latter part of December, 1911, until the following April. He then found her a place in the Darling hotel at Lawrence, where she stayed about four weeks, when the state board of control took charge of her and left her with the family of the probation officer at Lawrence. She was kept for a while with the family of the sheriff of Douglas county, and was later given in charge of the Children's Home Society of Topeka. Mr. Barnhart was asked if he knew her general reputation in Lawrence for truth and veracity. He answered that he knew only from what he had heard from the families with whom he had placed her; that he had no knowledge of her general reputation among the neighbors of the people with whom she lived. The witness was not permitted to state what her reputation for truthfulness was. The testimony of the only corroborating witness at the trial was somewhat weak and contradictory, so that the excluded testimony by which it was sought to impeach the veracity of the complaining witness was of considerable importance to the defendant. While the evidence might have been admitted, we can not say that there was error in excluding it. The rule has always been that the inquiry must relate to the general character and not to specific acts, and can be shown only by general reputation in the community where the person lives. (*The State v. Kirby,* 62 Kan. 436, 445, 63 Pac. 752; 40 Cyc. 2614.)

It is complained that while the jury were deliberating upon their verdict the court, in the absence of the defendant, gave an oral instruction to the effect that it would be proper for the jury to return a verdict and to recommend clemency. It appears that the jury had been out for about thirty hours, and before reaching a verdict sent word to the court that they would like to ask a question. The judge, accompanied by the

attorney for the defendant, went to the door of the jury room, when the foreman asked if it would be proper to return a verdict with such a recommendation. In answer the judge stated that there would be nothing improper in such a verdict, if the jury saw fit to make it; but he would not say whether the recommendation would be considered, nor would he make any promise as to what he would do in such a case. The foreman then requested the judge to wait for a few minutes, and within fifteen minutes thereafter the jury returned a verdict of guilty, with an oral recommendation for clemency.

A quite similar situation arose in the case of *The State v. Borchert*, 68 Kan. 360, 74 Pac. 1108. In that case, while the jury were deliberating and at a time when the balloting showed a disagreement on the question of defendant's guilt, they sent to the judge a written communication asking whether a verdict of guilty with a recommendation for mercy would be received by the court. Without notifying the parties, the judge wrote upon the paper, "Yes," and signing it officially, returned it to them. The verdict of guilty was finally agreed upon and returned with a recommendation for clemency. In the opinion the court recognized as a wholesome rule that no communication whatever relative to the case should pass between the judge and the jury otherwise than in open court and in the presence of the defendant, but refused to grant a new trial because the prevailing party was chargeable with no wrong, and because it affirmatively appeared that no injury or prejudice resulted to the defendant. It was said in the opinion:

"The jury merely inquired in advance whether a verdict with the extraneous matter would be received, and the judge, having authority to accept it or refuse it, chose to accept it, and notified the jury that it would do so." (p. 366.)

The communication was held to relate only to the

form of the verdict, not to any question as to the guilt or innocence of the defendant. It was also said in the opinion:

"There is nothing in the record to justify the contention that the effect of the judge's conduct was to hold out to the jury as an inducement to a verdict of guilty an implied promise that leniency would be shown in fixing the punishment." (p. 366.)

There is no room for distinguishing this case on the ground that the communication was oral. Exactly what transpired is shown as fully as though the communication had been in writing; and it was not an instruction upon the facts or the law of the case which the statute requires shall be in writing. The punishment for the offense is fixed by statute, and as the law stood at the time of the trial there was no discretion in the judge of the court by which he could limit the term of imprisonment or extend leniency. (Gen-Stat. 1909, § 2461.) Under the provisions of chapter 172 of the Laws of 1913, the court now has power to parole a person convicted of statutory rape. While the jury may have believed from what the judge told them that he had such power, or that he could limit the punishment, it can not be said that there was any inducement held out to the jury that leniency would be shown. The irregularity in the proceedings is not sufficient, in our opinion, to justify a reversal of the judgment.

On the motion for a new trial affidavits of some of the jurors were offered to the effect that the failure of the wife of the defendant to testify was talked of in the jury room and considered by the jury. The state offered the affidavits of other jurors which, in our opinion, were sufficient to justify the finding by the trial court that while some reference was made to the matter the jury gave no weight to it in arriving at the verdict of guilty. In *The State v. Brooks,* 74 Kan. 175, 85 Pac. 1013, it was held that before a new trial

would be ordered because of a violation of this statutory rule it must conclusively appear that the jury, or some one of them, in arriving at the verdict gave weight to the failure to testify. (To the same effect see *The State v. Mosley,* 31 Kan. 355, 2 Pac. 782, and *The State v. Goff,* 62 Kan. 104, 61 Pac. 683.)    In *The State v. Rambo,* 69 Kan. 777, 77 Pac. 563, a conviction of murder was set aside because one juror in the hearing of other jurors commented upon the failure of the defendant to testify, for the reason that the statement of the juror showed a consideration by him of the circumstances which was held to vitiate the verdict.    In the opinion it was said:

"A mere incidental mention, however, of the fact by a juror that a person on trial did not testify in his own behalf—a remark noting the circumstance, unaccompanied by an opinion that an explanation would be of service to the accused—might fall short of showing a consideration of the matter by the speaker, and not violate the statutory injunction." (p. 781.)

In *The State v. Brooks,* supra, it was said:

"The prohibition can not reasonably be construed as absolutely forbidding the court and jury to take any thought whatever regarding such omission of the defendant—to deny it entrance to the mind in any aspect. Such a requirement would be impracticable." (p. 179.)

We find no error in the record and the judgment will be affirmed.

PORTER, J. (dissenting) : In my opinion the testimony of witness Barnhart as to the reputation of the complaining witness for truthfulness should have been admitted. It appears to me that its exclusion can only be justified by a strained and technical construction of a rule of evidence. Technicalities, when urged by a defendant in a criminal action, no longer receive much consideration at the hands of courts; and there is

The State v. Evans.

far less reason why they should be relied upon by the state as a ground for excluding testimony which may throw light upon the question of the guilt or innocence of a defendant.   Frequently prosecuting attorneys, and sometimes trial courts, appear to lose sight of the fact that the state can have no interest in securing the conviction of a defendant if there is a reasonable doubt as to his guilt under all the evidence.

The defendant was charged with a grave and serious crime.   The complaining witness at first denied that anything improper had taken place, but afterwards swore to the complaint.   She had resided but a short time in the community where the offense was charged to have been committed.   She resided for a far longer period in Douglas county.   If the four or five families with whom she lived at Lawrence, covering a period of two or three months, had discovered that she was untruthful and could not be relied upon, and they had expressed their opinions to witness Barnhart, the defendant should have been permitted to show that fact.   Probably the neighbors of the people with whom she lived knew nothing about her one way or the other. But the witness Barnhart's testimony is that he knew her general reputation among the families and people with whom she lived.   This I think was sufficiently general to make his testimony competent.   For these reasons I dissent.

WEST, J. (dissenting) :  While in this class of cases juries usually convict promptly when the evidence is sufficient, in this case the former trial resulted in a failure to agree, and upon a second trial, after the jury had been out for thirty hours without reaching an agreement, the colloquy mentioned in the opinion occurred. It appears that at its close the judge was requested to wait a few minutes, and in about a quarter of an hour a verdict of guilty was reached.   Men of practical experience in trying cases must shut out all natural in-

51—90 KAN.

ferences and presumptions not to be impressed with the fact that the answer of the judge really closed the matter and brought harmony to a discordant jury. The idea manifestly was that the court had some power over the sentence to be imposed in case of conviction, which indeed the answer made by the judge implied, else he would have told them, as he should have done, that a recommendation for clemency could and would have no effect. The jury should have been instructed, not only that they had nothing to do with the matter of punishment, but that under the law at that time the court likewise was powerless to minimize or modify the penalty imposed by statute. The whole thing smacks too much of a compromise verdict.