State v. Keck.

---

No. 25,857.

THE STATE OF KANSAS, *Appellee*, v. GEORGE W. KECK, *Appellant*.

SYLLABUS BY THE COURT.

1. ARSON—*Information—Description—Sufficiency.* An information charging the unlawful and felonious burning of a dwelling house by the defendant, owned by a named man in a certain county, is not subject to be quashed for indefiniteness as to the location of the building burned, and an amendment stating that the house was within a measured distance from a certain town aided in the description of the building, and was not improperly allowed.

2. SAME—*Verdict—Presence of Defendant.* In the trial of the defendant the jurors to whom two forms of verdict were submitted reached an agreement that the defendant was guilty, and the foreman, without examination, attached his name to the form of verdict finding the defendant not guilty, and returned it into court. When the jurors announced that they had agreed upon a verdict the court sent for the defendant, who was in custody, but he did not reach the court room until after the jury brought in the verdict. On examination of the verdict returned, the court noted that it was a finding of not guilty, concluded that it was not necessary to wait for the arrival of the defendant, handed the verdict to the clerk, who read it, whereupon the jurors united in saying that was not their verdict. About that time the defendant arrived, and the court then directed the jurors to return to the jury room and bring in a verdict upon which they had agreed. The

---

1. Arson, 5 C. J. § 42.

defendant was present when this order was made: *Held,* the court rightly ordered the jury to return and bring in a verdict upon which the jurors had agreed; and further it is *held,* that the absence of the defendant when the verdict inadvertently signed was read, and declared to be a mistake by the jurors, was not such an error as requires the reversal of the conviction.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed July 11, 1925. Affirmed.

*J. E. Torrance* and *O. W. Torrance,* both of Winfield, for the appellant.

*C. B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *C. H. Quier,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: George Keck, who was convicted of arson in the third degree, appeals and assigns as error the overruling of a motion to quash the information, the permission given to the state to amend the information, and also of some proceedings had pertaining to the reception of a verdict.

The motion to quash the information was based on the ground that it did not definitely describe the location of the house alleged to have been burned by the defendant. In the information it was alleged that on a named date, in Cowley county, the defendant did then and there set fire to and burn a dwelling house, the property of Edward Glass. While the motion was pending the county attorney asked and obtained leave to amend the information in respect to the location of the dwelling house, and he then added by interlineation a statement that it was located about five miles south of the city of Dexter. Since the original information charged that the building was situated in Cowley county, within the jurisdiction of the court, and also stated the ownership, an amendment as to location was hardly necessary. There is nothing in the record to show that more than one building belonging to Glass had been burned, and nothing to show that the defendant could have been embarrassed in making his defense or have suffered any prejudice by the lack of a more definite description of the building burned. The amendment made aided somewhat in describing the location, but plaintiff claims that it was made after the jury was impaneled. We need not consider the effect of an amendment at that stage of the proceedings, since the record in its entirety shows that the amendment was allowed and made prior to the impaneling of the jury.

2. Criminal Law, 17 C. J. § 3719.

State v. Keck.

The principal complaint is that error was committed in directing the jury, which had unintentionally signed and brought in one form of verdict when it was their purpose to bring in another one which had been agreed upon, to return to the jury room and bring in the verdict they had agreed upon. The occasion for this direction was that the foreman of the jury, to which two forms of verdict had been submitted, had inadvertently signed the wrong form, and the mistake was not discovered until it was brought in and read by the clerk. When it was read the jurors unitedly protested that it was not the one agreed upon; that the one agreed upon was a verdict of guilty, while the one inadvertently signed by the foreman was not guilty. The defendant was not in court when the wrong verdict was read, but did come into the court room before the jury were directed to return to the jury room and bring in the verdict agreed upon. The circumstances relating to the reception of what is called the first verdict, and the direction to the jury to repair to the jury room and bring in the verdict agreed upon, as well as the absence of the defendant, while part of the proceedings were had, are set forth in a statement of the trial court made at the instance of the defendant and which has been made a part of the record. The statement is as follows:

"After the jury deliberated for a time—just how long I do not remember—they were returned to the court room by the bailiff and was asked by the court if they had agreed upon a verdict. The foreman, Mr. George Sloan, answered that the jury had so agreed. The foreman was directed to pass it up to the court, and the court examined the verdict. Prior to this time, however, the court had directed the sheriff to bring the prisoner from the jail. Upon glancing at the verdict it seemed that it appeared to be a verdict of not guilty, and the court announced that the presence of the defendant was not necessary, and directed that the clerk read the verdict. As soon as the verdict was read in open court a number of the jurors spoke up immediately, and before the court had the chance to ask them if that was their verdict, and stated that the verdict as read by the clerk was not their verdict. At about that time, or very soon thereafter, the defendant was brought into court by the sheriff, and the jury, while yet in their places and before being discharged, were ordered and directed by the court to return to their jury room under the charge of the bailiff, and to bring in the verdict that they had agreed upon. In a very few minutes thereafter the jury was returned into open court by the bailiff, the defendant being present; the foreman of the jury again passed up to the court the verdict of guilty, the jury was duly polled, and the questions as to how the error occurred in their first report is duly set out in the record of the case. When the jury first started to deliberate, the court had directed the reporter to, and he did prepare two forms of verdict, one finding the defendant guilty

and one finding the defendant not guilty, the only writing necessary for the jury to do in regard to the verdict, after they had agreed upon one, was to have the foreman sign such form as prepared by the reporter. When the court was fully satisfied from the statements of the jurors that the foreman had made a mistake in the verdict that he had signed, the court destroyed the erroneous verdict and sent the jury back, as above stated."

It is clear that the first verdict returned by the jury was not their real verdict, and the jurors all joined in declaring that it was not the verdict they had agreed upon. Under the statute, when any juror disagrees with the verdict returned, the jury must be sent out again. (R. S. 60-2917, 62-1412.)

In *The State, v. Seidel,* 113 Kan. 390, 214 Pac. 565, where several forms of verdict in a felony case were submitted to a jury and by mistake they brought a verdict on one of these forms, when it was obvious that they intended to find defendant guilty of another offense, it was held that the court did not err when it made reasonable inquiry and comment concerning the verdict, and the inquiry developed that the jury had written their verdict on the wrong form and that the court rightly sent the jury back to reconsider and correct their verdict, and that it was not error to receive and enter the corrected verdict and render judgment thereon. Here all the jurors disagreed with the form of the verdict which the foreman had inadvertently signed, and it was therefore proper for the court to send the jury out again and to bring in a verdict upon which they had agreed.

There is some ground for the complaint that the defendant was not present when the first verdict was returned and read. He had not given bond and was in custody while the jury was considering the case. When the jury sent word to the court that they had agreed on their verdict, the court directed the sheriff to bring the defendant into court in order that he might be present when the verdict was received; but the judge on opening the verdict and discovering that it was a finding of not guilty, concluded that the verdict might be read in the absence of the defendant, and therefore handed the verdict to the clerk to be read. Defendant did not reach the court until that verdict had been received and read, but he was in court when the jury were still in their places and before they were ordered to return to the jury room and bring in the verdict agreed upon. Defendant rightly argues that no proceeding should have been taken in his absence. He was charged with a felony and the law is that

State v. Keck.

an accused cannot be tried upon such a charge unless he be present in court.   (R. S. 62-1411.)   He has the statutory and inherent right to be present at every stage of the trial, and the question remains whether his absence during the handing up and reading of the verdict, and the assertion of the jurors that it was not their verdict, was prejudicial error.

Not every error justifies the reversal of a judgment. It is only one which causes substantial injury to the rights of the defendant. In the statute the court is admonished that a conviction shall not be overthrown for any defect which does not prejudicially affect the substantial rights of the defendant.   (R. S. 62-1718.)

In a trial for bigamy, where a jury had failed to agree and the court became satisfied that it could not agree, discharged the jury when the defendant was not present, and it was held that the discharge of a jury in the absence of a defendant was not material error.   (*The State v. White,* 19 Kan. 445.)

In another case the defendant was absent when a motion was made to require the state to elect which of two offenses it was claimed were charged in the information the defendant would be put upon trial.   He was absent during the making of the motion and its argument and consideration, but it was ruled that his absence was not fatal to a conviction.   (*The State v. Kendall,* 56 Kan. 238, 42 Pac. 711.)

In *The State v. Hobbs,* 62 Kan. 612, 64 Pac. 73, where the defendant was on trial for a felony, the jury were brought into court in the absence of the defendant and there asked the court for further instructions.   The court declined to give additional instructions, telling the jury that those already given were plain, and the jurors were sent back to the jury room with the advice that it was their duty to give careful attention to the evidence and instructions.   It was then noticed that defendant was absent, whereupon he was brought into court and all that had transpired in his absence was reënacted in his presence.   It was held that his absence during the first steps that were taken did not warrant the overthrow of the verdict.

In *The State v. Borchert,* 68 Kan. 360, 74 Pac. 1108, a jury that were out sent a note to the trial judge inquiring if a verdict of guilty accompanied by a recommendation for mercy would be received, and to this the judge wrote thereon an affirmative answer. While condemning the practice of communications between the

judge and the jury in the absence of the defendant, it was held that no prejudice resulted to the defendant from the communication and that the error did not require a reversal.

In another case of a similar kind the defendant was on trial upon a charge of rape. While the jury was considering the case an inquiry was sent to the judge in regard to whether it would be improper to include a recommendation for clemency if the jury should make it. The judge, in the absence of the defendant, went to the jury room and orally stated to the jury that such a recommendation would not be regarded as improper, but declined to say what consideration would be given to the recommendation or what action he would take upon it. It was held that this parley between the judge and the jurors was highly improper, but could not be regarded as a good ground for the reversal of the judgment. (*State v. Evans*, 90 Kan. 795, 136 Pac. 270.)

Here it appears that the steps taken during the brief absence of the defendant could not have substantially prejudiced his rights. The purpose of requiring his presence during the trial, so far as his rights are concerned, is that he may have knowledge of all that transpires at the trial and have opportunity to make objections and take such steps as are deemed necessary to protect his rights. It appears that he returned to the court room in time to make objections to the only order made by the court, directing the jury to return to the jury room and bring in a verdict upon which they had agreed. He knew of the mistake made in the return of a verdict upon which the jurors had not agreed nor intended to make, and there was no ground upon which a further objection could be made to a return of the jury to bring in the verdict agreed upon.

We therefore conclude that no material error was committed as against him.

There are some objections to rulings on the admission of evidence offered on the motion for a new trial, but we discover nothing in them that is material.

The judgment is affirmed.