[Crim. No. 1325.   Third Appellate District.—March 23, 1934.]

THE PEOPLE, Respondent, v. FLORA COVEY, Appellant.

R. B. Maxey and F. M. Brack for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with the murder of her husband by means of the use of a knife. She was tried by a jury. After nearly thirty hours of deliberation the jury returned into court and upon inquiry as to whether a recommendation for probation would be recognized in the event they found a verdict of manslaughter, they were informed that "the recommendation of the jury for mercy or anything of that kind is always given great weight by those in authority who are to fix the punishment". Within half an hour thereafter the jury returned a verdict of manslaughter to which this language was added, "and this jury recommends probation". Probation was necessarily denied under the provisions of section 1203 of the Penal Code for the reason that a deadly weapon was used in the perpetration of the alleged crime. A motion for new trial was denied, and the defendant was sentenced to imprisonment in the state prison for the term prescribed by law. From the judgment of conviction and the order denying the motion for a new trial the defendant has appealed.

█ It is contended the assurance of the court that a recommendation for probation is always given great weight encouraged the jury to believe that probation would be granted and therefore resulted in a compromise verdict of manslaughter which would not otherwise have been rendered, and that the advice of the court therefore constituted prejudicial error. Many other assignments of error are alleged which it will be unnecessary to consider in view of our conclusion that the challenged advice of the court constitutes reversible error.

The homicide was the climax of an orgy. Both the defendant and her husband had been drinking intoxicating liquor. The deceased was drunk. The defendant had taken at least two drinks of liquor some time prior to the affray which resulted in the death of her husband. There is evidence to support the claim that she was engaged in paring potatoes with a knife in the kitchen of their home. The deceased threatened to take their automobile and return to town and "get good and drunk". The defendant, knife in hand, followed him out to the sidewalk and protested against his carrying out his threat to continue his drinking bout. He seized her hands, and in the mêlée which followed, he was cut in the abdomen, and died three days later as a result of the wound which he received. The defense was based upon a claim of an accidental killing. Upon the contrary there is evidence to the effect that the defendant deliberately stabbed her husband with the knife, and also that he was cut on the head. There is evidence to indicate that the defendant possessed an exceedingly bad temper, and that the use of the knife was accompanied with a threat against her husband. Dr. O'Grady, of Oakdale, who rendered medical service to the deceased while he was at the hospital, testified that just prior to Covey's death, a conversation occurred between the defendant and her husband, which was admitted in evidence on the theory that it constituted a dying declaration made by Mr. Covey in the belief that death was imminent. Relating in the presence of her husband how the fatal wound was inflicted, the defendant said she "had her hands behind her back and he (her husband) was holding her hands and she either pushed back *or he lunged forward,* and at that time drove the knife into him". The defendant then asked her husband, "Isn't that right, Joe", to which he replied, "Yes, that is right." This affirmance by the

deceased of the possibility of having lunged forward onto the knife in his drunken condition gave credence to the defense which was predicated on the theory of an accidental cutting with the knife. If that theory were believed by the jury, or even if the jurors had a reasonable doubt regarding the alleged wilful or negligent inflicting of the wound, it would account for the fact that they had failed to agree upon a verdict during their deliberations for nearly thirty hours. The further fact that a verdict of manslaughter with a recommendation of probation was secured within half an hour after the court had assured them that the recommendation of a jury "is always given great weight", enforces the conclusion that the verdict was the result of a compromise, and that it would probably not have been rendered except for the fact that the jury expected the defendant would be granted probation. If that be true, the verdict is invalid and void.

The colloquy upon which the appellant relies for a reversal in the present case occurred as follows:

"The Court: Members of the jury, . . . do you want to communicate with the court?

"Foreman Duckart: Your Honor, the jury desires to know whether in case of a verdict for manslaughter with recommendation for probation, would be recognized *and carried out by this court?*

"The Court: Well, all such recommendations are considered by the court, whether, however, in this particular crime that would be carried out or not, I am not so sure. . . .

"The law provides that upon an application for probation or recommendation by the jury, that the court shall refer it to the probation officer for investigation and report. In other words, the right to make the application for probation is a part of our law and it must be referred to the probation officer by the judge and the report then made to the court and then it is discretionary with the court what he shall do with that recommendation. The recommendation of the jury for mercy or anything of that kind is always given great weight by those in authority who are to fix the punishment. Under our system, I might go on and still state further, after one is convicted and sentenced to the term prescribed by law, then the prison board of the state fixes the term. In other words, it varies, depending on the conduct of the prisoner. In other words, there is a chance for

those higher above the judge— (Here the court was interrupted by counsel for the defense who took an exception to the court's explanation regarding the fixing of sentence.)

"The Court: I am simply trying to give the jury information on just how the legal mechanics of dealing with a verdict—

"Foreman Duckart: That is what we want to know, your Honor.

"The Court: I thought that was necessarily included in the information you desired.

"Mr. Brack [attorney for the defendant] : If it please the court, just for the purpose of keeping the record clear, we will make an assignment of error on that."

The clear import of this colloquy is an assurance by the court that if the jury rendered a verdict of manslaughter with a recommendation of probation, the granting of probation would be "discretionary with the court", with the suggestion that the court was uncertain "in this particular crime whether (the recommendation) would be carried out". But the court clearly encouraged the jury to believe that it would be granted for he afterwards says: "It is discretionary with the court what he shall do with that recommendation. The recommendation of the jury for mercy or anything of that kind is always given great weight by those in authority." It is immaterial whether this language inferred that the court or the prison board would give the recommendation great weight. It is in direct violation of the statute for any tribunal to grant probation under the circumstances of this case. The jury should have been instructed that its only duty was to determine the guilt or innocence of the accused, and that under no circumstances had it the right to take into consideration the penalty which might be imposed in the event of conviction.

Of course the response of the trial judge to the jury's inquiry as to whether its recommendation for probation would be recognized and followed by the court was inadvertently given without intention of misleading the jury. Nevertheless it must have been understood by the jury to mean that at least it would receive serious consideration by either the court or the prison directors, with the inference that it was likely to be granted. That is unfortunate, since the jury evidently anticipated that the defendant would not be imprisoned if they rendered a verdict of manslaughter with

an accompanying recommendation for probation. It is reasonably certain this expectation procured a verdict which would not otherwise have been rendered. The result of this misunderstanding is peculiarly prejudicial since under no circumstances may the court or the prison board grant probation in this case, since it would be in direct conflict with the express inhibition of the provisions of section 1203 of the Penal Code, which reads in part:

" . . . Probation shall not be granted to any defendant . . . *who used or attempted to use a deadly weapon* in connection with the perpetration of the crime of which he was convicted, nor to one who in the perpetration of the crime of which he was convicted *inflicted great bodily injury.*"

The respondent argues that the purport of the court's advice upon the inquiry of the jury regarding the attitude of the court with respect to a recommendation for probation is that a petition for probation would be merely *considered* by the court or by the prison directors, and not necessarily granted. It is anomalous to contend that the court intended to assure the jury that either it or the prison board would *consider* a petition for probation which the law expressly prohibited the authority to grant. We are certain the court intended to convey no such misleading impression. The honesty of the judge in furnishing the desired information to the jury is not doubted. It is evident that in his haste, without the opportunity at hand of refreshing his memory with respect to the amended section of the code, the court overlooked the fact that probation could not be granted under any circumstances to one who used a deadly weapon in connection with the perpetration of the crime of which he is convicted.

The right to consider, to grant or to deny probation, as distinguished from parole, is ordinarily exclusively the province of the court. Even though the assurance of the court is construed to mean that the prison board only would consider the recommendation of probation, it is equally fatally misleading for the reason that neither the court, the board nor any other tribunal has the authority to grant probation under the circumstances of this case.

The recommendation of the jury in the present case was not for leniency only in the administration of punishment for the offense; it was a recommendation that the court

forego imprisonment altogether. The statement which was made by the court was not in reply to an inquiry from the jury as to whether *leniency* in administering punishment would be granted, or whether their request for probation *would be considered*. It contained an inquiry as to whether such recommendation would be approved and "carried out by the court". While the judge did not state that it would be carried out, and upon the contrary did say *he was not sure* it would be carried out "in this particular crime", the assurance that "it is discretionary with the court", and that such recommendations from a jury are always given great weight, must have encouraged the jurors to believe that probation would be granted. Since the undisputed fact in this case that the crime with which the defendant was accused was accomplished by means of a deadly weapon, which fact necessarily requires the unqualified denial of probation, it follows that the jury should have been informed that the law absolutely prohibited the granting of probation under such circumstances. Any other reply is necessarily misleading, since neither the court nor the prison board had any discretion in that regard. The court, however, was warranted in answering the question by stating that it is the sole province of the jury to determine the guilt or the innocence of the accused, and that the administration of the penalty therefor rested solely with the court and the prison board pursuant to law. Under the circumstances of this case, it is not a mere question as to whether it was proper for the jury to recommend mercy, or even whether the court or the board, in a proper case, could or would grant clemency. This is a clear case in which clemency may not be exercised. The recommendation of the jury for probation was therefore futile.

The respondent has filed an excellent brief, carefully and ably reviewing the authorities upon this subject. We are cited to no authority in this or other jurisdictions which upholds a judgment of conviction where language such as was used in this case so strongly tended to mislead the jury. It would be useless to consume the space necessary to distinguish these numerous cases. In the case of *People* v. *Bruno,* 49 Cal. App. 372 [193 Pac. 511], upon which the respondent chiefly relies, there was no recommendation for leniency. The jury found the defendant guilty as charged. When the

jury, after deliberation, asked the court whether "all of the verdicts of guilty carried a state prison sentence", the judge properly replied that this "was a matter with which they had nothing to do". While it is true in that case that the judge proceeded to explain to the jury "the extent of the punishment that might be imposed" under the various forms of verdicts which had been submitted to it, including the legal right of the accused, in the event of conviction, to move for a new trial or apply for probation, there was no intimation that a recommendation for clemency or probation would be granted or considered by the court. The court then directed the jury to resume its deliberations with the admonition for it to agree upon one of the forms of verdicts with which it had been supplied, including that of not guilty. The jury promptly returned a verdict of guilty as charged, without a recommendation of mercy. Upon appeal the judgment was affirmed. The case furnishes no authority in support of the present judgment. In that case probation might have been properly granted. In the present case it is specifically prohibited by law. Moreover, in the Bruno case there was no recommendation for probation or clemency, and no suggestion that either would be given consideration.

In the case of *State* v. *Evans,* 90 Kan. 795 [136 Pac. 270], also relied upon by the respondent, after several hours of deliberation upon their verdict by the jury, the judge was asked by the foreman *"if it would be proper* to return a verdict with such a recommendation (for clemency)"? to which the judge replied, "there would be nothing improper in such a verdict, if the jury saw fit to make it, but he would not say whether the recommendation would be considered, nor would he make any promise as to what he would do in such a case". The jury promptly returned a verdict of guilty as charged, with an oral recommendation for clemency. On appeal it was held the inquiry of the jury related only to the proper form of the verdict and that, in effect, the court merely instructed the jury that a verdict was not rendered invalid merely because it contained a recommendation for clemency, and that no inducement was held out by the court for the jury to agree upon a verdict with the anticipation that leniency would be exercised in administering punishment for the crime. In that case the jury were not told that a recommendation for mercy or probation is usually

given great weight by a court or prison board in fixing the penalty. That decision therefore affords no precedent in support of the judgment in the present case. The other cases which are cited by the respondent on this appeal may be likewise distinguished. We are able to find no case which goes to the extreme length of supporting a judgment of conviction under circumstances similar to those which exist in the present case.

The respondent asserts that the defendant waived her objection to the prejudicial nature of the court's remarks for the reason that no objection thereto was made. In this assertion, the respondent is in error. There was a direct and specific exception registered to the remarks of the court with relation to the recommendation for probation, when the attorney for the defendant said, at the close of the colloquy: "If it please the court, just for the purpose of keeping the record clear, we will make an assignment of error on that."

The judgment and the order are reversed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 7, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1934.