No. 30,682.

THE STATE OF KANSAS, *Appellee*, v. L. J. RICHARDSON, *Appellant*.

(19 P. 2d 735.)

Opinion filed March 11, 1933.

*Hattie Franey, Earl M. Knight,* both of Arkansas City, *James A. McDermott* and *Richard B. McDermott,* both of Winfield, for the appellant.

*Roland Boynton,* attorney-general, *E. E. Steerman,* assistant attorney-general, *E. T. Bloomer,* county attorney, and *R. O. Mason,* special prosecutor, for the appellee; *George Templar,* of Arkansas City, of counsel.

The opinion of the court was delivered by

SMITH, J.: This was an action where the defendant was convicted on five counts for violating R. S. 17-1020. He appeals.

The facts are as follows: Appellant had been for some years the president and managing officer of the Santa Fe Building and Loan

Association. He was charged in thirty-seven counts and convicted in five. He was charged with using and disposing of a part of the moneys, property, assets and funds of the association without being authorized to do so. Counts 1 and 5 charged the overdrawing of salary in the amount of $100 in each instance, count 30 charged the withdrawing of $30, count 31 charged the using and disposing of $2,004.07, consisting of two $1,000 liberty loan bonds and $4.07 in cash, and count 36 charged the using and disposing of $188.78. The original complaint and warrant were in the following language:

". . . did then and there unlawfully, willfully and feloniously use and dispose of a part of the moneys, property, assets and funds of the said Santa Fe Building and Loan Association, to wit, the sum of $100 of the value of $100 without having first been duly authorized and otherwise than in the regular and legitimate business of the corporation."

The defendant was bound over, and an information was filed in the same language. When a motion to quash the information was filed each count except count 31 was amended by adding the words "a more particular description of which is to your informant unknown."

Count 31 was amended by adding the words "consisting of two $1,000 4th liberty loan bonds of the United States of America and $4.07 in money, a more particular description of which is to your informant unknown." A motion was filed to quash this information on the grounds that each count thereof was so indefinite and uncertain as not to state facts sufficient to constitute a public offense. As to count 31, a plea in abatement was filed on the ground that appellant had not had a preliminary hearing on the charge of using and disposing of liberty bonds.

During the trial the state offered some annual reports signed and sworn to by appellant in which his salary was listed at $2,400 a year. Appellant undertook to show that he had an understanding with the board of directors that he should receive $2,400 a year salary and in addition he would be allowed expenses in promoting the association in the amount of about $200 a month. The trial court sustained objections to the evidence that was offered to substantiate this claim.

Appellant urges as error that the motion to quash should have been sustained; that the plea in abatement as to count 31 should have been sustained; that a motion for continuance should have been sustained; that appellant was prejudiced by remarks made

by the court in sustaining objections to evidence offered by appellant; that there were erroneous instructions given by the court; that counsel for the state was guilty of prejudicial misconduct, and that there was prejudicial misconduct on the part of the trial court in interfering with the deliberations of the jury by giving certain oral instructions to the foreman of the jury in the absence of the rest of the jury and in the absence of appellant.

The statute under which the prosecution was brought is R. S. 17-1020. It is as follows:

"Any officer, director, trustee, attorney, agent or servant of any association heretofore or hereafter to be incorporated who shall use or dispose of any part of the moneys, property, assets or funds of such association, or assign, transfer, cancel, deliver up or acknowledge satisfaction of any bond, mortgage or other written instrument belonging to such association, unless duly authorized, or otherwise than in the regular and legitimate business of the corporation, or who shall be guilty of any fraud in the performance of his duties, shall be liable civilly to the corporation, and also to any other party injured, to the extent of the damage thereby caused, and shall also be guilty of a felony, and upon conviction thereof shall be imprisoned in the penitentiary for not less than one nor more than five years."

The argument directed at the complaint and warrant and at the amended information may be considered together. They both charged the offense substantially in the words of the statute. Appellant argues that the information should have stated whether the thing used or disposed of was money, property, assets or funds. This court has held many times that a complaint, warrant and information that stated the offense charged substantially in the words of the statute was sufficient. (See *State v. Foster*, 30 Kan. 365, 2 Pac. 628.) In that case it was said:

"Again, it is insisted that the information is defective in that it fails to contain a statement of the facts constituting the offense in plain language. The point here is this: The section reads, 'Every person, who, with intent to defraud, shall pass, utter or publish, or offer or attempt to pass, utter or publish, as true, any forged or counterfeited instrument or writing,' etc. Now, the information uses these words, and charges that the defendant did 'pass, utter and publish as true.' This, it is claimed, is no statement of facts, but simply of conclusions of law; and the case of *Commonwealth v. Williams*, 13 Bush (Ky.) 267, is cited as authority. We do not think the claim is well taken. This is a statutory offense, and it is a general proposition that it is sufficient to allege such an offense, in an information, in the words of the statute. (*The State v. Barnett*, 3 Kan. 250; *The State v. White*, 14 Kan. 540; Cr. Code, sec. 108; vol. 7, U. S. Dig (1st Series), pp. 379-80, secs. 205-6, and authorities cited therein; also, *The State v. Johnson*, 26 Iowa 407; *People v.*

*Rynders,* 12 Wend. 426.) While there may be some limitations on this general doctrine, as where the statute simply designates the offense and does not in express terms name its constituent elements, yet we think the rule obtains in the case at bar. Of course it was never the duty of the pleader to narrate the evidence, and we think the words 'pass, utter and publish' make a clear and sufficient description of fact. They are words of common use, and refer to acts which are understood by everyone. So that, notwithstanding the remarks of the court in the case cited from 13 Bush, we think the information states the facts and is not subject to the objection made." (p. 366.)

The argument is made that the plea in abatement to count 31 should have been sustained on the ground that the words with reference to the liberty bonds were added after the preliminary hearing, and if these words were necessary to describe the offense, then defendant had no preliminary hearing on that charge. In *State v. Miner,* 120 Kan. 187, 243 Pac. 318, the court said:

"Defendant contends that he should not have been put on his trial on the first and third counts, since he was not bound over to answer on the charges involved therein and was bound over only to answer on but one offense—the one the county attorney and the prosecutrix had in mind when the complaint was filed and the warrant for his arrest was issued.

"A majority of this court holds that defendant's contention lacks merit. A defendant may be informed against on as many crimes as the evidence adduced at the preliminary hearing tends to show the accused to have committed, whether all of such crimes were charged in the complaint and reiterated in the warrant for his arrest or not. (Crim. Code, sec. 55, R. S. 62-621; *Redmond v. The State,* 12 Kan. 172, syl., sec. 3; *State v. Bailey,* 32 Kan. 83, 3 Pac. 769; and see, also, *State v. Fleeman,* 102 Kan. 670, 675-676, 171 Pac. 618." (p. 190.)

To the same effect is the holding in *State v. Wagoner,* 128 Kan. 299, 278 Pac. 1. There is no merit to this contention of defendant.

During the trial of the case the state introduced eight annual statements to the building and loan supervisor of the state. These statements were signed and sworn to by defendant as president and general manager of the association and purported to show the financial condition of the association. Among other items included was that of salary of defendant. It was listed as $200 per month. Among other recitals was the following, "that no item of resource, liability, revenue, expenditure, fees, commissions, profit or loss has been omitted therefrom or is improperly set forth." As has been noted, the first and fifth counts charged the overdrawing of salary. These statements were admitted on the theory that they were admissions against interest. Defendant attempted to meet this proof by testi-

mony that while his salary was $2,400 a year the directors of the association had agreed to pay him expenses up to $200 a month. Defendant claimed that the items charged in counts 1 and 5 were drawn and applied upon his previous expenses. When this evidence was offered the court sustained an objection to it, and said:

"I think the objection should be sustained. I don't believe he can show in the face of these reports something different. If you want to show by this witness that these reports signed and sworn to are not true, I don't believe they are competent in the face of this."

Ruling again on the same question, the court said:

"The objection is sustained. So you gentlemen will understand, there has been offered some evidence and admissions of Mr. Richardson relative to the contract for salary and expenses. If you gentlemen want to claim those are not true, and want to show that those things are not true, the court is going to let you open this phase."

Defendant argues that these were prejudicial remarks and urges that the making of them was error. This argument will be discussed together with the complaint that is made of an instruction on the same subject. This instruction was as follows:

"It is admitted that the defendant was at the time charged in the information the president and general manager of the building and loan association in controversy; and it was his duty as such president and general manager, together with the secretary of the association, to make reports to the supervisor of building and loan associations as before stated in these instructions. A number of reports admitted to have been made, and verified by the defendant, have been offered in evidence. And you are instructed that the defendant is bound by the statements made in such reports, unless it should appear that there were statements made in such reports or report which were erroneous and unintentionally made, and without any intention of deception or fraud. And unless there is evidence to show that such reports or report were erroneous, and that the errors were unintentionally made, it is your duty to regard them as true."

The objection of defendant to the remarks of the trial court and to the instruction is that it makes the equitable rule of estoppel apply in a criminal case. This doctrine was made to apply in a criminal case in *State v. Mason*, 61 Kan. 102, 58 Pac. 978. There a bank officer, who was charged with a violation of the banking laws, claimed that he should not be convicted because the bank had not been regularly organized. In dealing with this question the court said: "An officer who helped to organize the corporation and who has been connected with it continuously for a series of years will hardly be allowed to shield himself from the penalty of

violated law because of irregularities and defects in the organization." (p. 106.) To the same effect is the rule laid down in Underhill's Criminal Evidence, 3d ed., § 455. There it is said:

"The admissibility and effect of transcripts of public records are frequently under consideration in the trial of public officials for embezzling public property or funds. The general rule is that public records are admissible as evidence of all facts which are contained therein, and which were required by statute to be recorded by the official who made the entry. So the failure of a public officer to pay over money which he has collected may be shown by a transcript of an official register in which the payment should have been entered. Such records are not, however, conclusive against the defendant. . He may endeavor to explain or to impeach them, unless he had already examined them and appeared satisfied with the entries. Under these circumstances, he may be regarded as estopped by them."

Defendant argues that the effect of this instruction was that he was prevented from explaining the facts and circumstances surrounding the making of the report. We cannot agree with this. The instruction only stated that defendant was bound by the statements unless it was explained that they were made erroneously and without an intention to deceive. The record discloses that defendant did introduce evidence as to the expenses during the trial.

Defendant complains that some prejudicial remarks were made by the prosecuting attorney during his argument. This matter was not called to the attention of the trial court in the motion for a new trial and will not be considered for the first time on appeal. (See *State v. Cole*, 136 Kan. 381, 15 P. 2d 452.)

Defendant complains of alleged misconduct of the trial court with reference to the deliberation of the jury. Some time after the jury had retired to consider its verdict the foreman of the jury met the judge in the corridor of the courthouse. The foreman spoke to the judge as follows: "Some of the jurors want to know what the punishment would be, what punishment could be inflicted upon a verdict of guilty on any one of the counts." The judge told him that the punishment could be made to run consecutively on each count or could be made to run concurrently, but that was a matter for the court, and the jury had nothing to say about it. The juror then said, "All right, I think we will be down in about five minutes." Counsel for defendant was present when this conversation took place. What was said to the juror was a correct statement of law. In *State v. Evans*, 90 Kan. 795, 136 Pac. 270, the court in passing on a similar case said:

"Exactly what transpired is shown as fully as though the communication had been in writing; and it was not an instruction upon the facts or the law of the case which the statute requires shall be in writing. The punishment of the offense is fixed by statute, and as the law stood at the time of the trial there was no discretion in the judge of the court by which he could limit the term of imprisonment or extend leniency. (Gen. Stat. 1909, sec. 2461.) Under the provisions of chapter 172 of the Laws of 1913, the court now has power to parole a person convicted of statutory rape. While the jury may have believed from what the judge told them that he had such power, or that he could limit the punishment, it cannot be said that there was any inducement held out to the jury that leniency would be shown. The irregularity in the proceedings is not sufficient, in our opinion, to justify a reversal of the judgment." (p. 799.)

It does not appear that any rights of the defendant were prejudiced by what took place.

The judgment of the trial court is affirmed.