No. 36,468

THE STATE OF KANSAS, *Appellee,* v. ALBERT HAZEN, *Appellant.*

(165 P. 2d 234)

Opinion filed January 26, 1946.

*Robert C. Mayse,* of Ashland, was on the briefs for the appellant.

*A. B. Mitchell,* attorney general, *Leon W. Lundblade,* assistant attorney general, and *Horace H. Rich,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: Defendant was convicted by a jury of simple assault and subsequently adjudged to pay a fine of $100 and costs. He brings his case here by appeal. Questions presented for review are sufficiency of (1) the information, (2) the evidence, and (3) the instructions.

The information charged that on May 5, 1945, in a public place in Comanche county the defendant, Albert Hazen, did then and there "unlawfully and willfully assault one Otto Schumacher and Joe Schumacher by cursing and threatening to do bodily harm to Otto Schumacher and Joe Schumacher and causing said Otto Schumacher and Joe Schumacher to have just cause to fear and that they do fear the commission of an assault with intent to do bodily injury or harm." Sufficiency of the quoted allegations was challenged by defendant during the course of the proceedings leading up to the rendition of judgment by a motion to quash, an objection to the introduction of testimony, and a motion in arrest of judgment, each challenge being based upon the specific premise the facts as stated in such information did not constitute a public offense.

It appears from the record, although it is of little, if any, importance in determination of the appeal, that for some time ill feel-

ing had existed between the defendant and Joe and Otto Schumacher as a result of the Schumachers' attempt to fence some land, completely surrounded by land owned by defendant, and recently purchased by Otto, which tract prior to its sale had been rented by the defendant. This ill feeling culminated in a series of events which transpired in the city of Protection and eventually brought about the filing of the present criminal action. The first of these, which took·place at the railroad depot and involved the defendant and Joe Schumacher, requires little attention since on motion the state elected not to rely on what occurred there as establishing the commission of the offense charged. It suffices to say as to it that the defendant came into the depot, commenced an altercation with Joe Schumacher, made some threats, shook his fist in Joe's face, and walked out after the depot agent remarked that if there was any arguing to do it would have to be done outside the depot.

The second event of the series to which we have heretofore referred is the one of vital concern on this appeal. The state elected to rely on the evidence pertaining to it for conviction and contends such evidence establishes the offense charged in the information. It followed the altercation at the depot and took place at a blacksmith shop. With respect to it the testimony of the prosecution shows that later in the day when Joe had joined his father, Otto, and while they were there attending to some business, the defendant came to the blacksmith shop and engaged them in a conversation relating to the rights of the respective parties to the land of which prior mention has been made. Shortly the conversation became heated and then ensued the action and conduct by defendant on which the prosecution relies to uphold his conviction. Since the parties are not in accord as to the import to be given such acts ·and conduct we detail certain phases of the happenings in· form as described by some of the witnesses.

Otto Schumacher testifying for the prosecution, on direct examination, was asked questions to which he made answer as follows:

"Q. Did Mr. Hazen come there to the blacksmith shop? A. He did.

"Q. Where were you when he came to the blacksmith shop. A. I was right by the door.

"Q. Was Joe with you? A. Yes, he was.

"Q. What did Mr. Hazen do? A. Drove up on the road and run over to where I was and asked if I put up the fence and I said I did.

"Q. Did he say he was going to hit you and stomp you in the ground? A. Sure he did. If I made one move, he would have done it.

"Q. What did you do? A. I just stood there and looked into his eyes.
"Q. Did you offer to defend yourself in any way? A. No.

"Q. What did he threaten to do to you at the blacksmith shop? A. Stomp me in the ground.
"Q. Right there? A. Right there.
"Q. At the time he threatened you, he had his fist in front of your nose and the other fist clinched, is that right? A. Yes.
"Q. Do you fear him now? A. Yes, sure I do.
"Q. Do you know of him having any other altercations or fights in your community?

"A. Isaac Baird.
"Q. Did he cripple Baird up? A. He couldn't see for a week.
"Q. You know that to be the truth? A. I know that to be the truth.
"Q. You knew that at the time Mr. Hazen was threatening you at the blacksmith shop? A. I did."

Cross-examination of this same witness discloses the following questions and answers:

"Q. He didn't say: 'I am going to knock the hell out of you here'? Yes or no? Can you answer? A. I say, yes. If I had made one move, he would have done it.
"Q. How did he say it? A. 'I don't like you God damn Dutchmen. God damn you, I will just tromp you in the ground if you make a move.'
"Q. If you make a move? A. If I moved.
"Q. He was going to strike you. A. That is just right.

"Q. He didn't strike you, did he? A. No, but I told you if . . .
"Q. There wasn't anybody holding his arms? A. No, I didn't see anybody holding his arms.
"Q. He could have struck you if he had intentions of striking you? A. He would have if I had moved."

Certain questions propounded to and answers made by Kenneth Wymer, a witness for the state, the owner of the blacksmith shop, read:

"Q. Who came to your shop first, Otto Schumacher or Mr. Hazen? A. Otto.
"Q. Did Joe Schumacher come to the shop before Mr. Hazen? A. Yes.
"Q. What happened when Mr. Hazen came? A. Well, he came over to Otto and went to arguing with him about this fence.
"Q. And what, if anything, did he do? A. He stood close to him and shook his fist at him and threatened to hit him if he didn't stay out of his way.

"Q. Did he tell him what he was going to do to him, in the shop? A. He said, 'I will stomp you in the ground.'

"Q. You heard him say he was going to stomp him in the ground? A. Yes.

"Q. Did you hear him say anything that he was going to do to Joe? A. All I heard him say to Joe was to keep his mouth shut and keep out of the way.

"Q. From what you saw, do you think Otto Schumacher was in danger of being hurt? A. Yes, I do."

On cross-examination these questions and answers appear as part of Wymer's testimony:

"Q. I asked you if Hazen told Schumacher that he was going to hit him there? A. Sure he told him.
"Q. What? A. 'I will hit you and stomp you in the ground.'"

Another witness stated in effect that while the defendant did not hit Otto he could have hit him so that he would not have known what happened to him.

No useful purpose would be served in setting out the testimony of the defendant at length. It can be summarized thus: He admitted he came to the blacksmith shop and engaged the Schumachers in conversation, and that while there talking to Otto he had his fists doubled up; he inferentially conceded, if in fact he did not actually admit, he shook his fist in Otto's face; he stated in language which would do no credit to this opinion that if Otto did not stay off the land in controversy he would kick his posterior portions; and finally he denied he ever had any intention of hitting Otto or that he threatened to either strike or stomp him into the ground while the latter was at the blacksmith shop.

The only other witness who testified on defendant's behalf corroborated his version of the affair.

In giving consideration to the information as challenged by appellant we must keep in mind the requirement of the common law, it is essential to the validity of an information that it conform strictly to established formality and charge an offense with technical accuracy and nicety of language, is no longer in force and effect in this jurisdiction. By legislative fiat that has been dispensed with and in lieu thereof has been substituted a far more simple rule (*State v. White,* 14 Kan. 538).

For the moment, and before resort to our decisions, we turn to the statute for such guidance as is there to be found.

Appellant stands charged by information with the offense of simple assault as set forth in G. S. 1935, 21-436, which reads:

"Any person who shall assault, or beat or wound another under such circumstances as not to constitute any other offense herein defined, shall upon conviction thereof be fined in a sum not exceeding five hundred dollars, or by imprisonment not exceeding one year."

The form of such information is controlled by other statutory provisions dealing with informations generally.

With respect to their content G. S. 1935, 62-1004, provides:

"The indictment or information must contain, . . . second, a statement of the facts constituting the offense, in plain and concise language, without repetition."

As to their sufficiency G. S. 1935, 62-1010, states:

"The indictment or information is sufficient if it appear therefrom.

. . . . . . . . . . . . . . . .

"Fourth. That the offense charged is clearly set forth in plain and concise language, without repetition. And,

"Fifth. That the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon conviction, according to the right of the case."

Regarding defects G. S. 1935, 62-1011, reads:

"No indictment or information may be quashed or set aside for any of the following defects:

. . . . . . . . . . . . . . .

"Sixth. For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged. Nor,

"Seventh. For any other defects or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Since the enactment of the sections of the statute just quoted this court has definitely committed itself to the general doctrine that in charging statutory offenses, except in those cases in which the statute simply designates and does not describe or name the constituent elements of the offense, informations are sufficient if they charge an offense in the language of the statute. Even the statutory words need not be strictly pursued but others conveying the same meaning may be used. The extent to which the rule has been announced and applied is evidenced by the following decisions involving the criminal offense mentioned after the citation of each such decision: *State v. White,* 14 Kan. 538, assault with intent to kill; *State v. Foster,* 30 Kan. 365, 2 Pac. 628, the passing, uttering and publishing of a forged draft; *State v. McGaffin,* 36 Kan. 315,

13 Pac. 560, murder; *State v. Craddock,* 44 Kan. 489, 24 Pac. 949, and *State v. Brower,* 75 Kan. 823, 88 Pac. 884, disturbing the peace; *State v. Seely,* 65 Kan. 185, 69 Pac. 163, robbery; *State, v..Tinkler,* 72 Kan. 262, 264, 83 Pac. 830, statutory rape; *State v. Custer,* 85 Kan. 445, 116 Pac. 507, and *State v. Curtis,* 108 Kan. 537, 196 Pac. 445, rape; *State v. Buis,* 83 Kan. 273, 111 Pac. 189, unlawful practice of medicine; *State v. Weldy,* 113 Kan. 734, 215 Pac. 1005, labor on Sunday; *State v. Clark,* 121 Kan. 817, 250 Pac. 300, jail breaking; *State v. Oliver,* 129 Kan. 719, 284 Pac. 357, persistent violator of the. prohibitory liquor law; *State v. Goodrich,* 136 Kan. 277, 15 P. 2d 434, issuing and delivering a worthless check; *State. v. Richardson,* 137 Kan. 38, 19 P. 2d 735, violation of the building and loan laws; *State v. Hillis,* 145 Kan. 456, 457, 65 P. 2d 251, larceny.

With specific reference to the crime of assault the rule is equally applicable (see *State v. Finley,* 6 Kan. 366; *State v. Beverlin,* 30 Kan. 611, 2 Pac. 630, and *State v. Custer* 85 Kan. 445, 116 Pac. 507).

When the information in the case at bar is carefully examined, and then tested by both rule and statutory provisions to which we have referred, we experience no difficulty in determining that it states a public offense, namely, simple assault as described in G. S. 1935, 21-436. The charge was made substantially in the words of the statute, which, as we have seen, is usually sufficient. No defect or imperfection appears in its, averments which tended to prejudice the substantial rights of the accused upon a trial on the merits. The defendant was fairly informed of the offense charged against him, and, had he admitted it, the trial court from an examination of the record alone, could have determined that an act forbidden by law had been committed and rendered judgment according to the rights of the case. Nothing more was required. It follows all attacks on the sufficiency of the information were properly overruled.

We might well cease consideration of the information at this point but before doing so desire to comment upon certain arguments advanced by the appellant with respect thereto. Two of these have to do with the averments in the information pertaining to the means and manner of the assault. It is argued they were incomplete and therefore insufficient. Such details are matters of evidence and need not be pleaded (6 C. J. S. 960, Assault and, Battery, § 104) but the fact they are pleaded does not invalidate the information where it contains all the essential elements of the offense charged as defined by the statute (27 Am. Jur. 626, Indictments and In-

formation, § 61). Besides, G. S. 1935, 62-1011 (sixth), expressly provides that superfluous allegations, when there is sufficient matter alleged to indicate the crime and person charged, do not constitute grounds for the sustaining of a motion to quash. Another is that the information is defective in that it contains no affirmative allegation the appellant intended or attempted to do Otto Schumacher bodily, physical, or corporal injury. The answer to this argument is to be found in what has already been said. An additional answer is that this court has held a specific intent to do bodily injury is not necessarily essential to the offense of simple assault (*State v. Triplett*, 52 Kan. 678, 35 Pac. 815; *State v. Child*, 42 Kan. 611, 22 Pac. 721).

Appellant's next contention is that the trial court erred in overruling his demurrer to the evidence. It requires, first, determination of the meaning of the term "assault" as used in the statute and, second, examination of the record for the purpose of ascertaining whether there was evidence to sustain the finding that such offense was committed.

Assault has been variously defined sometimes in language designed to cover the field generally and more often in terms intended to fit the circumstances of the specific case involved. Too frequently, definitions have been so limited in their scope because of the facts involved or so broadly stated as the result of an attempt to include all situations which might arise as to cause confusion and misunderstanding. That this is so is evidenced by reference to many well-recognized authorities including our own decisions. To illustrate, "assault" has been defined as:

". . . any intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as [to] create a well founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." (6 C. J. S. 796, Assault and Battery, § 1.)

". . . an intentional attempt, by violence, to do an injury to the person of another, and as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery . . ." (4 Am. Jur. 124, Assault and Battery, § 2).

". . . an apparent attempt, by violence, to do corporal hurt to another. . . ." (1 Wharton's Criminal Law, 12th ed., 1094, Assaults, § 799.)

". . . an attempt, which, if consummated, would result in a battery." (*Anderson v. Crawford*, 265 Fed. 504.)

". . . any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being;

as, raising a cane to strike him; pointing, in a threatening manner, a loaded gun at him; and the like." (2 Bishop's Criminal Law, 9th ed., 16.)

". . . . an unlawful setting upon one's person. (1 Words & Ph. Jud. Def. p. 532)." (*State v. Custer*, 85 Kan. 445, 446, 116 Pac. 507.)

" 'An attempt to commit a violent injury upon the person of another;

" 'An attempt to offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect;

" 'An offer or attempt to do a corporal injury to another,' (3 Cyc. 1020, 1021; see, also, 1 Words & Phrases, 532-538)." (*State v. Holman*, 90 Kan. 105, 132 Pac. 1175 and *State v. Linville*, 150 Kan. 617, 619, 95 P 2d. 332.)

There is, of course, repetition in language and reiteration of phrases in the foregoing quotations. That very fact tends to illustrate the point we seek to emphasize and prompts us to take action which it is to be hoped will do away with future possibilities of uncertainty and doubt in cases possessing characteristics and issues such as are here involved. However defined heretofore, we hold that an assault as that term is used in G. S. 1935, 21-436, is an apparently violent attempt, or a willful offer with force or violence, to do corporal injury to another, without the actual doing of the injury threatened, as by lifting the fist or a cane in a threatening manner and that neither actual intent nor actual present ability to do the injury threatened is necessary if the circumstances are such that the person threatened reasonably believes the injury will be done.

With assault defined what is to be said for appellant's contention the evidence did not establish its commission in the instant case?

It would serve no useful purpose to repeat the testimony. Enough has been heretofore related to disclose there was some evidence to the effect the appellant in a willful and violent manner approached Otto Schumacher, shook his fists in his face, threatened to then and there stomp him into the ground and that Otto had reason to and did believe he was about to be injured. That testimony, if believed by the triers of fact, was sufficient to establish the offense of assault as charged in the information and justified the rendition of the verdict returned by the jury. It makes no difference such testimony was denied by the appellant or that he claimed such threats as he did make at the blacksmith shop had to do with action which he would take against Otto at some time in the future in the event the latter continued in his attempts to fence the land which he had purchased. Neither was the offense

less complete because of the fact that for some reason the appellant failed to follow through and commit a battery. Nor is the result affected, as is suggested by appellant, because of the fact he thought he was entitled to the use of the premises and was attempting to establish his right to possession thereof. The law recognizes no such unlawful method of testing legal rights. (*State v. Bradbury,* 67 Kan. 808, 74 Pac. 231.)

In passing we pause to state the conclusion just announced is no innovation of law in this jurisdiction. Years ago this court held that if one person shoot in the direction of another without any intention of injuring such other person, but only for the purpose of frightening or alarming him, intending thereby to create the impression he will injure him, he is guilty of assault. (*State v. Triplett,* supra.) Later, in *State v. Coyle,* 103 Kan. 750, 175 Pac. 971, we said the fact that a person carried a gun and a whip and through fear compelled a boy to assist him in driving his father's cows to such person's corral was an invasion of the boy's freedom and in itself an assault. See, also, *State v. Archer,* 8 Kan. App. 737, 54 Pac. 927 and *State v. Taylor,* 20 Kan. 643, which are to the same general effect. When carefully analyzed there is no sound basis for differentiation in the fundamental principles involved in the decisions just cited and those determinative of the case at bar, the sole distinction being in the means used to accomplish the result.

Next, appellant complains that the trial court failed to give certain instructions as requested by him. Such requested instructions have been read and considered. Some of them might well have been refused because based upon an erroneous theory of the law applicable to the facts of the case. Those that were proper were incorporated in the instructions as submitted and the refusal to give them in the form requested was based upon that ground. Appellant suffered no prejudice as a result of such action.

Finally, it is contended the instructions themselves were erroneous. They, too, have been carefully examined. We fail to find anything in them which was detrimental to the rights of the appellant. If anything, they were more favorable to him than the law required. In any event, irregularities complained of were not so important as to require a reversal of the judgment.

Since we find no error in the record the judgment is affirmed.

HARVEY, C. J., not participating.