No. 37,041

THE STATE OF KANSAS, *Appellee,* v. JIMMIE McGLADE, *Appellant.*

(196 P. 2d 173)

Opinion filed July 10, 1948.

*W. H. Coutts, Jr.,* of El Dorado, was on the briefs for the appellant.

*O. J. Connell, Jr.,* county attorney, argued the cause, *Edward F. Arn,* attorney general, *H. R. Fatzer,* assistant attorney general, and *M. J. Moon, Jr.,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

COWAN, J.: The defendant was convicted of robbery in the first degree and sentenced to the Hutchinson reformatory for the period prescribed by statute for such offense. About November 9, 1946, William Lester Baum held up a poker game in El Dorado, Kan. The evidence of the state showed that the defendant and his brother,

Dan McGlade, a few days prior, had arranged with Baum to hold up the game which they knew would be in progress at the time. The defendant and Dan McGlade were in the room at the time of the holdup. Baum entered the room, carrying a small revolver and having on a mask. He told the players that this was a stickup and directed the defendant, to whom he pointed, to search the players for their money and put it on the table. The defendant threw his money on the table and pretended to search the other participants or occupants of the room but, in fact, took no money from them. Baum, becoming nervous, took the money the defendant had placed on the table, together with the money that was lying on the table at the time of his entrance, and left the room. Previous to the trial Baum pleaded guilty to robbery in the first degree but had not been sentenced at the time of the trial. Baum testified for the state, detailing the agreement made with the defendant prior to the robbery and the actual occurrences at the time of the robbery. At the close of the state's case, it asked the trial to be recessed until it could apprehend Dan McGlade, brother of the defendant. Dan McGlade's name had not been endorsed on the information as a witness. The court found that the state had not been diligent in attempting to procure his attendance at the trial and directed the trial to proceed. The defendant took the stand, denied the arrangement and conspiracy but admitted, of course, that under the threat of Baum's gun he did pretend to take the money from the various persons in the room at the time of the holdup. After the defense had rested, Dan McGlade, who was on parole from the Hutchinson reformatory, was called as a rebuttal witness. The defense objected to this witness being used in chief. The court sustained that objection and directed that he be used only as a rebuttal witness. The testimony of Dan McGlade, however, was that of witness in chief and not in rebuttal. He testified, in substance, to the same things Baum testified to in chief, including the conspiracy to rob the poker game. Clearly, his evidence was not limited to that of a rebuttal witness.

After the jury retired to consider its verdict, it appears to have reached a stalemate of 11 to 1 for conviction. The bailiff, who had charge of the jury, overheard the conversations in the jury room and reported, either to the county attorney or his assistant, to the clerk of the district court and apparently to the district judge, the name of the juror who was refusing to convict and the pronounce-

ment of such juror of his unalterable determination to continue to vote for acquittal until the end of time. Later the jury was called into court; the foreman reported the jury was deadlocked. The judge gave the jury the usual instructions incident to attempting to get a jury to agree. About 9:00 P. M. the jury retired for further consideration of the evidence. Soon thereafter the foreman of the jury came to the door of the jury room and asked to see the judge. The bailiff brought him to the judge, where he conferred for approximately two minutes. According to the judge's testimony, the foreman asked him what the penalty would be if the defendant were found guilty and he was informed that the matter was one for the court and not for the jury. The foreman returned to the jury room and shortly thereafter the jury came in with a verdict of guilty with a recommendation for clemency. The only evidence in the record as to what the foreman told the jury as the result of his quest for information is found in the affidavit of the juror who was holding out for acquittal. This affidavit was offered in support of motion for a new trial, and is, in part, as follows:

"We continued to discuss the matter in the jury room, and my belief in the defendant's innocence never wavered. About this time the Foreman excused himself, and left the jury room by himself. Later he came back and told us that he had talked to the Judge, and the Judge told him that if the boy was found guilty he would only be sent to the Reform School for awhile. The other jurors continued to excoriate me, and I told the Foreman—'Well I will go along with you fellows if the Judge will be lenient with this boy, and if you will write it out in full on the verdict that way.' We had been given only two forms of verdicts by the Judge. The Foreman filled out one of these forms, and then he changed it to read to the effect—(I cannot give the exact words), that the Judge was to show leniency to the boy. Then this amended verdict was signed by the Foreman."

The juror's affidavit continues with the statement as to what induced him to vote finally for conviction. Of course, jurors are not permitted to impeach their verdict by subsequently testifying as to what caused them to reach the conclusion they did. It is quite obvious from the facts and circumstances that this report of the foreman to the jurors caused the lone juror, who was holding out for acquittal, to abandon his position.

The defendant filed a motion for a new trial and a motion in arrest of judgment, both of which were overruled. After sentence, the defendant appealed. The defendant cites numerous errors but as we view the record the only meritorious ones are two in number.

G. S. 1935, 62-802, requires the names of witnesses to be endorsed

on the information. This statute was enacted for the protection of the defendant. Generally, the question of endorsement of names on the information is one of discretion to be exercised by the trial court. The trial court here did not permit the name of Dan McGlade to be endorsed on the information but permitted him to testify in rebuttal only. Rebuttal testimony is evidence which tends to contradict the defendant's testimony, but strictly speaking, is only such evidence as tends to contradict some new fact or circumstance brought forth by the defendant's testimony and is not evidence which is a restatement of the state's case in chief. In this instance, Dan McGlade's testimony was clearly evidence in chief and was prejudicial to the defendant, being admitted as it was after the defendant had testified denying the charge. Under the circumstances, the admission of Dan McGlade's testimony in rebuttal was prejudicial error. (State, ex rel., v. Stout, 101 Kan. 600, 168 Pac. 853; State v. Eidson, 143 Kan. 300, 54 P. 2d 977.)

Another point raised by the defendant involves the misconduct of the bailiff and the foreman of the jury. As has been stated many times before, after a jury has retired, the only proper forum for communication between a juror and the court or the court and a juror is in open court in the presence of the rest of the jury and counsel for both parties, and the defendant, where proper record of the conversation can be had. When the foreman came to the judge and asked about the penalty, it became incumbent upon the district judge to say, "I cannot talk to you alone. You did wrong in leaving the other jurors and coming to me." It would then have been the duty of the judge to direct the bailiff to bring the jury to the courtroom and, in the presence of counsel and the defendant, permit the foreman to present any question which was bothering the jury and answer such question, if proper. Failure to follow this simple procedure has given rise to a serious question of invasion of defendant's rights.

After the jury retires, the bailiff is under a sworn duty not to permit any person to communicate with the jurors except by order of court and not to communicate to any person the state of their deliberations. In this case, the bailiff violated his duty. The state has cited several cases in an attempt to establish that the conduct in this case was not prejudicial. One of the cases so cited is State v. Richardson, 137 Kan. 38, 19 P. 2d 735. In that case, after the jury had retired, the foreman met the judge in the corridor of the

courthouse and asked the judge what punishment could be inflicted upon a verdict of guilty on any one of the counts. The judge told him that the punishment could be made to run consecutively on each count or could be made to run concurrently but that was a matter for the court, and the jury had nothing to say about it. Counsel for defendant were present when this conversation took place. What was said to the juror was a correct statement of the law and was not prejudicial, as it did not affect the jury's verdict. There was no promise of leniency. It was made in the presence of counsel for the defendant who apparently made no objection thereto. Here, however, the foreman, in reporting to the rest of the jurors his conversation with the judge, stated the judge had told him if a verdict of guilty were returned with recommendation for clemency the sentence would be reduced.

Another case cited is *State v. Evans*, 90 Kan. 795, 136 Pac. 270. The jury there, before reaching a verdict, sent an inquiry to the court to know if it would be proper to return a verdict with a recommendation for clemency. The judge, in the absence of the defendant, went to the door of the jury room and stated that there would be nothing improper in such a verdict but that he would not say whether the recommendation would be considered nor make any promise as to what he would do in such a case. Shortly thereafter a verdict of guilty was returned, with recommendation for clemency. This court held that the statement of the judge related only to the form of the verdict, and inasmuch as it did not appear that the jurors were induced to render a verdict of guilty by an implied promise that leniency would be shown, the irregularity was not sufficient to justify a reversal. The court, in that case, quoted the following from *State v. Borchert*, 68 Kan. 360, 366, 74 Pac. 1108:

" 'There is nothing in the record to justify the contention that the effect of the judge's conduct was to hold out to the jury as an inducement to a verdict of guilty an implied promise that leniency would be shown in fixing the punishment.' " (p. 799.)

Such was not the situation in this case. Here the direct result of the garbled report of the foreman of the jury of his conversation with the judge caused the jury to believe that a verdict of guilty, coupled with a recommendation for clemency, would materially reduce the sentence. Had the foreman not been permitted to communicate with the judge in the absence of the other members of the jury and the defendant and his counsel, the foreman's statement

would have had no effect upon the other jurors. It is clear from the circumstances of this case that the foreman's report of his conversation with the judge was instrumental in influencing the dissenting juror to agree to a verdict of guilty, when, except for such reported promise, he would not have done so. (*State v. Hathaway,* 143 Kan. 605, 56 P. 2d 89.) The approval by the trial court of the conduct complained of was prejudicial.

For the errors above set forth, the cause is reversed, with directions to grant the defendant a new trial.