No. 37,464

THE STATE OF KANSAS, *Appellee,* v. CHARLES HANES and WILLIAM R. JOHNSTON, *Appellants.*

((200 P. 2d 317)

Opinion filed December 11, 1948.

*Harry Gillig, Jr.,* and *James V. Riddel, Jr.,* both of Wichita, were on the briefs for the appellants.

*Edward F. Arn,* attorney general, and *Harold H. Malone,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action defendants were convicted of a violation of G. S. 1935, 21-527, commonly called robbery in the first degree. They have appealed.

The robbery took place at the Cubula Club, a night club located outside the city of Wichita but in Sedgwick county. It was charged to have taken place shortly before midnight. A Mr. A. W. Smith was the complaining witness. He and his wife both testified for the state. Their testimony was that they operated the club and also lived there. They testified that on the night of the robbery the two defendants came into the club about 8:30; that one of them engaged Smith in conversation and the other defendant played the marble machine; that they were there all evening and drank several bottles of beer; that Mrs. Smith was present all evening; that shortly before midnight when only Mr. and Mrs. Smith and the two defendants were present one of the defendants drew a Luger revolver and said "This is it, Al"; that the defendants rifled the cash register, then backed Smith and his wife into a back room, took a bag of money and a 38-caliber Smith-and-Wesson revolver out of a cigarette

machine; that the defendants then marched Smith and his wife to the outside door of the club; one of the defendants got in his car, a 1940 Hudson coupé; drove up to where Mr. and Mrs. Smith were standing; picked up the other defendant and both the defendants drove off. Mrs. Smith's testimony was to about the same effect. On rebuttal, Mr. Smith testified that when the two defendants marched them to the outside door one of them reached up over the entrance of the club and unscrewed a light bulb. A deputy sheriff testified that when the officers arrested the defendants they found a Luger revolver in the grip of one of them. The defendants took the stand and testified that they did not rob Smith and his wife, that is, they denied the story told by the two Smiths. The jury was duly instructed, the case argued and the jury retired in care of the bailiff to deliberate. While they were deliberating they requested the trial court that they be given a view of the place where the robbery was charged to have taken place. This request was granted and the trial court instructed the bailiff to take the jury to the Cubula Club. After viewing the club the jury returned to the jury room and sometime the next day returned a verdict of guilty.

The defendants filed a motion for a new trial, one ground being that the jury was guilty of misconduct; that the bailiff had commented to the jury on the evidence, another that the jury received evidence and papers not authorized by the court and another ground calling attention to conversations they alleged had occurred between the prosecuting witness and his wife on one side and members of the jury on the other at the time the jury was viewing the place where the robbery was charged to have taken place.

On the hearing of the motion for a new trial the defendants introduced the testimony of one juror. He testified that he was a member of the jury which convicted defendants; that he heard the evidence and proceeded to deliberate with the other jurors; that the jury brought in a verdict of guilty and he accompanied the rest of the jurors in a body with the bailiff to the Cubula Club. Counsel then started to interrogate the juror as to what happened at the Cubula Club and counsel for the state objected because it would call for testimony which would impeach the jury's verdict. The court asked the juror if he remembered the instructions that the court had given the jury not to talk to anybody outside of the jury about the case and not to allow anybody to talk about it in their presence. The juror said he did remember that instruction. The court proceeded then to rule that counsel could ask the jury anything that

would tend to show that he violated this oath. The juror then testified that while he was out at the Cubula Club he had conversed with Mrs. Smith; that he asked her where the light bulb was that one of the defendants was supposed to have unscrewed and that she showed that to him. He also asked her where the car was parked and some of the jurors asked about the cigarette machine and some of the conversation was in the presence of all of the jurors but not all of it; that the bailiff and Mrs. Smith conducted the jurors through the rooms of the club; that the bailiff and Mrs. Smith showed the jurors the marble machine that one of them was supposed to have been playing and the cigarette machine; that these were pointed out by Mrs. Smith, who was the same person who had testified against the defendants at the trial. This juror then testified that while they were deliberating in the courthouse, the jury had asked that the court reporter bring in his notes of testimony concerning the Luger revolver into the juryroom and that he read certain evidence to them; that they were a green jury and the foreman of the jury talked to the bailiff about what the evidence was. He was not sure just exactly what the questions were. The juror testified, in part, as follows:

"Q. (By the Court.) What did he say? A. The question was asked regarding this gun whether Glen Davis had told Al Smith before he went over to arrest the boys. I don't know whether the question was answered 'yes' or 'no'."

On cross-examination this witness testified that the trip to the club was made at the request of the jury; that Mr. and Mrs. Smith were there; that the jury requested certain information while there; that the marble machines had been testified about at the trial and they asked to see them and the light globe; that they also went there to see the big dance room about which there had been some testimony. Counsel stipulated that the remaining members of the jury if they took the stand would testify to about the same effect as the foregoing witness. The bailiff called by the state testified that he took the twelve jurors to the club; that he was at the club on the day the jurors were there; that Mr. and Mrs. Smith were there at the time; that Mr. Smith was working behind the counter; that while they were there some of the jurors spoke to him about certain things; that he inquired about the cigarette machine and the light bulb and they called Mrs. Smith and she told him about them; that the jurors were with him at the time excepting that some of the rooms were so small that all twelve jurors could not get into the room at the same time; that when he took them out there in the

bus he told them not to talk with anybody as the court had instructed them. The trial court denied the motion for a new trial—hence this appeal.

The specification of error is the court erred in overruling defendant's motion for a new trial.

The only question argued by the defendants here is that the evidence taken on the hearing of the motion for a new trial showed that the jury was guilty of such misconduct as to require a new trial. The statute which provides that the jury may view the place where some material fact occurred is G. S. 1935, 62-1818. That section provides as follows:

"Whenever in the opinion of the court it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body under the charge of an officer to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person other than the person appointed to show them the place shall speak to them on any subject connected with the trial."

Attention is called to the last sentence in that section. Such language states as clearly as the English language can state that two persons, that is, the bailiff and the person, if any, appointed by the court to show the jury the place are to speak to the members of the jury on any subject connected with the trial and no others. The above language was intended by the legislature to meet the provisions of section 10 of the bill of rights. That section provides as follows:

"In all prosecutions the accused shall be allowed to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to meet the witness face to face, and to have compulsory process to compel the attendance of witnesses in his behalf. . . ."

When a witness or some person who might have been a witness speaks to the members of the jury about some fact connected with the case while the jury is thus absent from the courtroom and is not in the presence of the defendant, then that provision of the constitution is violated.

In *State v. Adams*, 20 Kan. 311, Adams had been convicted of burglary. During the trial the court sent the jury in charge of an officer to examine the place of the burglary. One of the jurors being familiar with the locality was directed to show it to his fellows. The defendant on appeal urged that this was error because he was not present with the jury when they viewed the place. He

relied on the section of the bill of rights, which we have already quoted. The statute was the same then as G. S. 1935, 62-1818, now, pursuant to which this jury was sent to the night club. This court emphasized the language in the section to which we have referred—that only two people, that is, the bailiff and the person appointed by the trial court to show the jury the place, may accompany the jury. We said that by implication at least the statute provided that the defendant was not to be present. This court pointed out that this absence of the jury from the courthouse was actually analogous to the jury deliberating in the jury room. After a somewhat lengthy discussion of the entire constitutional question this court said:

"We are of opinion, therefore, that the fact that the jury were sent in a body under charge of an officer to view the place of the crime, unaccompanied by the defendant, is not necessarily an error fatal to the trial, and that where the record discloses no objection thereto by the defendant, and no application for permission to accompany them, and no error alleged on account thereof in the motion for a new trial, it is too late to insist in this court that the judgment must be reversed therefor." (p. 326.)

At the beginning of the trial defendant requested the jury be sent to view the place where the robbery occurred and were denied such view because they were unable to pay the expense of transporting the jury. Neither side objected to the jury having the view. The view was finally had at the request of the jurors themselves. The defendants, however, objected at their first opportunity to the jury receiving information from the complaining witness and his wife while they were viewing the place. The statute itself safeguards the rights of a defendant by the last sentence, to which reference has already been made. The jurors had already been instructed as to talking with anyone other than a fellow juror. The instruction follows that statute fairly well. The oath administered to the bailiff pursuant to G. S. 1935, 62-1448, covers the situation fairly well. Had the jurors obeyed the instructions of the trial court or had the bailiff kept his oath neither Mr. nor Mrs. Smith would have been at the club while the jury was there and none of the jurors would have spoken to them had they been there. As it was, Mrs. Smith at least told the different members of the jury about several details concerning which she and her husband had testified. Such had the effect at least of corroborating the story told by these two witnesses.

It is worthy of note that the bailiff when he took the stand in

behalf of the state did not categorically deny that Mrs. Smith talked to the jurors. He did say that the jurors asked him questions and he asked them of Mrs. Smith and when she answered him he related the answer to the jurors. Giving the testimony of the bailiff the construction most favorable to the state, it was to the effect that the jurors stood there watching him ask Mrs. Smith questions and paid no attention to her answer but waited to get their answer from him. Obviously this would have the same effect on the jurors as though they had talked directly to Mrs. Smith.

We have steadfastly held such conduct as this to be misconduct. See *State v. Bailey,* 32 Kan. 83, 3 Pac. 769, where the jury was permitted to separate while deliberating, three of the jurors being permitted to enter the courtroom to get a drink of water and one being permitted to go to the water closet in the rear of the courthouse. See, also, *State v. Richardson,* 137 Kan. 38, 19 P. 2d 735. There the trial court told one of the jurors in the corridor in answer to an inquiry that the sentences on several counts could be made to run concurrently or consecutively, but such was the concern of the trial court, not the jury. Counsel for the defendant was present when this conversation took place. See, also, *State v. Evans,* 90 Kan. 795, 136 Pac. 270, where the trial court stepped to the door of the jury-room and in answer to an inquiry stated that there would be nothing wrong with a verdict of guilty with a recommendation for clemency. We did not reverse the judgment in any of the foregoing cases, however, because we concluded that while the conduct was misconduct, still no substantial right of the defendant was violated. In other words, the error was not prejudicial error.

On the other hand, in *State v. Lantz,* 23 Kan. 728, a prosecution for burglary, someone passed an atlas of the county where the offense was charged to have been committed into the jury room after the jury had retired to deliberate. We held this was prejudicial and required a new trial. See, also, *State v. Mulkins,* 18 Kan. 16, where the only misconduct was failure of the trial court to properly admonish the jury when it separated. *State v. Schaben,* 69 Kan. 421, 76 Pac. 823, was a prosecution for stealing cattle. After the jury had retired to deliberate at the jury's request the bailiff secured and handed to them an almanac. One of the points in the case had been whether certain nights were too dark to handle cattle. We said:

"The use by the jury of such publications, or any documents that might influence the verdict, is misconduct from which prejudice to the defendant will be presumed."

The judgment in that case was not reversed, however, because the almanac, about which complaint was made, was not brought up as part of the record.

In *State v. Gibson*, 131 Kan. 570, 292 Pac. 931, the jury had been deliberating and had been permitted to separate for the night. One of the jurors examined the files in his place of business and obtained information there bearing on an important circumstance in the trial. This was called to the attention of the trial court on the hearing of the motion for a new trial, but a new trial was denied. We held this was error. There, as here, the state argued that the conduct of the juror was nonprejudicial. We said:

"Cases are cited where jurors' statements of personal knowledge of facts concerning matters in issue have been held nonprejudicial, but none of them constituted so flagrant a case of misconduct as the one here presented."

See, also, *State v. McGlade*, 165 Kan. 425, 196 P. 2d 173. There we held a conversation between the trial judge and the foreman of the jury as to the efficacy of a recommendation for clemency to be so prejudicial as to require a new trial.

Here the state does not contend but that the conduct of the jury was misconduct. Counsel only calls our attention to G. S. 1935, 62-1718, which provides that we should give judgment without regard to technical errors or defects. This is much more than a technical error. Under such circumstances the state has the burden of establishing that the conduct was not prejudicial. (See *State v. Schaben*, supra.) It has made no attempt to sustain that burden. No case is cited where witnesses for the state were with the jury and had the opportunity to talk to them at all, much less a situation such as this where they had such an opportunity to show the members of the jury all about the circumstances of the alleged offense at the very place where they had testified the offense took place.

Jurors are only human. They have the natural frailties of other mortals. To expect them to be subjected to such an interview as this record discloses is asking too much. The framers of the statute did not anticipate they would be. Had the bailiff obeyed the law or observed his oath they would not have been. We cannot say the conduct of the jury at the night club was not prejudicial.

The judgment of the trial court is reversed with directions to grant defendants a new trial.

PRICE, J., not participating.