No. 39,986

State of Kansas, *Appellee*, v. Pallas H. Webber, *Appellant.*

(293 P. 2d 1014)

Opinion filed
February 29, 1956.

*Evart Garvin,* of St. John, argued the cause, and *Robert Garvin* and *Morris Garvin,* both of St. John, were with him on the briefs for the appellant.

*Paul E. Wilson,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, and *Eldon L. Meigs,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This was an appeal by the defendant from a conviction in the district court on an appeal to that court from a conviction in the county court of a violation of that part of the vehicle code (G. S. 1949, 8-547) which forbids the turning of a motor vehicle from a direct course upon a highway before such a movement can be made with reasonable safety.

Appellant contends on appeal that no direct course upon a highway was established by the evidence and the complaint did not state a public offense. He also contends he had looked and thought the turn could be made with safety and that the accident was the result of speed on the part of the driver of the car which attempted to pass him. His contentions will be covered later after a summary of the facts and pertinent evidence.

On October 9, 1954, at about 6:00 p. m. appellant and his wife were driving north from Pratt on highway 281; they were returning to their home in Stafford; a hubcap came off their car and at the first intersection north, appellant turned his car around for the purpose of going back and finding the hubcap; appellant parked the car on the shoulder on the west side of the highway which was the approximate location where he thought the hubcap had come off; the car was headed south; appellant got out of the car and looked for the hubcap until darkness caused him to abandon the search and he then returned to his car.

Appellant further testified that he looked for approaching traffic from the north and south both before and after getting into his car, but saw none; he then started the car and immediately commenced a direct turn across the highway to head back north; after making part of the turn he looked through his window and again saw nothing, but when he was about halfway across the highway, he became aware that another car was in the vicinity; there was nothing to impair his vision.

Witnesses on behalf of the state testified to the following facts:

Louis Dean Horton, driver of the car coming from the north and going towards Pratt, placed the time of the accident at about 5:30 p. m.; he was about one half or one fourth of a mile to the north when he first saw appellant's car parked with the two left wheels on the pavement and the rest on the shoulder; appellant had "just kind of veered, started like he was going on down the road going south and we seen him look back. But he said he didn't see us." Instead of going on down the road, appellant cut over into the left lane; he (Horton) honked the horn for quite a distance before he came up to appellant's car; he was traveling sixty to sixty-five miles per hour; there was a little knoll about one half mile north of where he tried to pass appellant; he saw appellant's car as soon as he came over the knoll; appellant's car traveled very slowly and came to a position lengthwise across the highway; the center stripe of the highway came through about the middle of appellant's car.

T. O. Brewer, a passenger in the Horton car, testified that it was dark and appellant's car was parked on the shoulder; that the car started to move back gradually into the lane of traffic, then started to turn into what appeared to be a U turn if it had been completed; they (Horton and Brewer) first noticed appellant's car as they came over a slight rise about one half mile to the north; appellant's car was barely creeping when he drove out onto the highway; he traveled about two car lengths or more on the highway before starting to make the turn.

Marvin Lewis, highway patrolman, testified he arrived at the scene about 6:50 p. m.; he stated that appellant's car had been parked with all four wheels off the blacktop on the west shoulder, which was quite wide; the tire tracks of appellant's car showed that it went out into the west lane of highway 281, continued south for seventy-five or one hundred feet, and then angled rather abruptly to the southeast; it then veered off and was finally parked

on the east shoulder. Lewis further stated he had given appellant a ticket to appear in court; he also testified that at sixty-five miles per hour the Horton car would have been traveling ninety-three feet a second.

Glenn Clopton, another highway patrolman, testified he arrived at the scene with Marvin Lewis; that appellant's car tracks were in a southeasterly direction from where the car had been parked on the west side shoulder; the car had come out onto the highway, had proceeded south for seventy or seventy-five feet, and then had crossed the highway in a southeasterly direction.

At the end of the state's evidence appellant demurred and moved for a discharge, but both the demurrer and the motion were overruled. After all the evidence was in the court instructed the jury. The record disclosed no objections were made to any particular instruction and it will, therefore, serve no purpose to reiterate the instructions here. The jury returned a verdict of guilty, the trial court in time overruled a motion for a new trial and sentenced the appellant. This appeal followed.

The first question raised by appellant on appeal is that the complaint does not state a public offense. As previously mentioned, the statute involved is G. S. 1949, 8-547, and the part which is applicable here reads:

"(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety. . . ."

The pertinent parts of the complaint stated,

". . . one Pallas H. Webber . . . did then and there unlawfully turn a vehicle . . . from a direct course upon a highway before such movement could be made with reasonable safety."

This is a description of the offense in the words of the statute and we cannot agree with appellant that the complaint should have been quashed. It is sufficient. Kansas authority on this subject is plentiful and it is well covered in *State v. Hazen*, 160 Kan. 733, 737, 165 P. 2d 234, where there is a thorough discussion of the subject.

It is quite clear that this was a public offense because it was an act or omission forbidden by law, and the law provides a punishment. (G. S. 1949, 8-5,125.) We cannot agree with appellant's contention that the statute applies only in civil cases and that the law applicable in negligence cases is appropriate here. This is a criminal action and we are not concerned with anything re-

lating to a possible damage action which might grow out of the facts and circumstances of this case.

The only objections made to the instructions were general and considering the instructions as a whole, they appropriately covered the case. The requested instructions of appellant followed his theory that negligence, coupled with contributory negligence, is the only question here, but in view of what we have already said, that construction is incorrect. The trial court did not err in refusing to give the requested instructions.

Appellant stated that he looked and did not see the other vehicle but it had to be there according to the evidence of the two men in it and the two highway patrolmen who arrived immediately after the accident. We believe the jury was justified in finding that the turn from a direct course was made when it was not safe to make such a turn and for this reason we will not disturb the verdict. The controlling rule in this case is that a person is presumed to have seen what he could or should have seen. This rule is neither novel nor startling and does not require a review of our Kansas cases thereon at this time.

We do not find any error on the part of the trial court and the judgment and sentence thereon are affirmed.

HARVEY, C. J., not participating.